■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN P. ZAMBUTO, Appellant.—Judgment modified and, as modified, affirmed, in accordance with the following memorandum: Defendant was convicted after a trial before the court without a jury of receiving unlawful gratuities (Penal Law, § 200.35) and of a violation of subdivision 5 of section 73 of the Public Officers Law which makes it a misdemeanor for a public official to accept a gift having a value greater than $25 "under circumstances in

which it could reasonably be inferred that the gift was intended to influence him * * * in the performance of his official duties". He was sentenced to a six-month term of imprisonment for each conviction, the sentences to run concurrently. The evidence does not support the finding of guilt for receiving unlawful gratuities (Penal Law, § 200.35). That conviction is reversed and the count dismissed. As the senior area representative of the State Board of Social Welfare, defendant had supervisory duties in connection with a private proprietary home for adults (PPHA) known as Parkside Manor and owned by Dygert. Defendant accepted benefits from Dygert chiefly in the form of repairs and improvements on his home. The record establishes that defendant gave Dygert substantial and unusual personal assistance, rendered mostly after hours and on weekends and holidays, and extending over a period of more than one year, including finding and negotiating with prospective lessees and administrators for the PPHA on Dygert's behalf and extensive promotional and counseling services in connection with the opening and staffing of the facility. The overwhelming proof is that such services were not part of defendant's official duties which were to supervise "institutions providing care for adults, to assure compliance with provisions of the Social Welfare Law and with administrative rules and policies relating to standards of care." There is no proof from which the court could conclude that the gratuities were given for or in anticipation of any actions of defendant in his official role as an administrator charged with the responsibility of supervising, inspecting and licensing Dygert's PPHA. Thus, the People failed to prove that the services for which the benefits were received were performed by defendant in his official capacity or that the services were "official conduct which he was required or authorized to perform" (Penal Law, § 200.35). We affirm the conviction for violation of subdivision 5 of section 73 of the Public Officers Law. Despite the lack of proof that the gifts were intended to influence defendant in the performance of his official duties, the court properly concluded, because of defendant's relationship to Dygert, that the acceptance was *"under circumstances in which it could be reasonably inferred"* (Public Officers Law, § 73, subd 5; emphasis added) that the gifts were made for an improper purpose. In view of the reversal of defendant's conviction for receiving unlawful gratuities, defendant's six-month sentence of imprisonment for violation of the Public Officers Law should be modified to a fine of $1,000 as a matter of discretion in the interest of justice (CPL 470.15, subd 6). All concur, except Simons, J., who dissents in part, in the following memorandum.

Simons, J. (dissenting). I dissent from the judgment insofar as it modifies the sentence. Defendant was formerly employed by the State Board of Social Welfare as a Senior Area Representative. He was charged generally with the duty of supervising institutions which provided care to adults and specifically with supervising the construction and operation of Parkside Manor, a proprietary home for adults operated by one Dygert. He had the power, as he told Dygert, to close the facility. Starting about June or July of 1973 defendant began to discuss with Dygert various problems which he was having with maintenance of his personal residence, specifically the roof, plumbing, air conditioning, painting and wallpapering. On each occasion he asked Dygert whether the subcontractors could do anything to help him. Not surprisingly Dygert had the items repaired or replaced promptly at no expense to defendant. Dygert testified that defendant knew of the costs and on one occasion saw a bill that had been prepared (but never sent to defendant) for $2,430.80. Defendant, however, never offered to pay for these repairs, and those benefits plus other gifts from Dygert to defendant during

the year or so involved here totaled approximately $3,500. Defendant has been convicted of violating subdivision 5 of section 73 of the Public Officers Law, but he has successfully defended against the charge of receiving unlawful gratuities because the gratuities were not given in exchange for performance of his official duties. He maintains that they were to compensate him for substantial personal services rendered by defendant in helping Dygert in the operation of Parkside Manor. Thus, the regulator, charged with protecting the public interest, practically joined the party to be regulated in a "partnership", to his ultimate benefit in gifts and gratuities of $3,500. Considering the age and experience of this defendant it can hardly be contended that he acted innocently or out of naivete. The Trial Judge thought that this conduct and the appalling conflict of interest exhibited by it warranted a penalty of six months in county jail. I cannot say that sentence was excessive and if I were to modify it at all I would impose probation with the condition of restitution of $3,500 to Dygert so that defendant would at least pay for what he got. (Appeal from judgment of Monroe County Court—receiving unlawful gratuities and another charge.) Present—Cardamone, J. P., Simons, Hancock, Jr., Doerr and Moule, JJ.