■ In the Matter of NEIGHBORHOOD CLEANERS ASSOCIATION-INTERNATIONAL, Appellant, v NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION, Respondent. [751 NYS2d 63] —Cardona, P.J. Appeal from a judgment of the Supreme Court (Bradley, J.), entered February 5, 2001 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to, inter alia, review a declaratory ruling issued by respondent.

Concerned about human exposure in residences and businesses near dry cleaners to elevated levels of Perchloroethylene (hereinafter PERC), a solvent used by 95% of the dry cleaning industry in the state, respondent, through a negotiated rule-making process (*see* Executive Order [Cuomo] No. 156 [9 NYCRR 4.156]), promulgated new regulations, 6 NYCRR part 232, seeking to reduce public exposure to PERC emissions. According to the regulatory impact statement for 6 NYCRR part 232, toxicological studies in laboratory animals that were administered high doses of PERC in the air and orally over their lifetimes showed the solvent to be carcinogenic. Moreover, the United States Environmental Protection Agency classifies PERC as a potential human carcinogen. The regulations, under 6 NYCRR part 232, effective May 15, 1997, prescribe more stringent, and therefore, more expensive, equipment standards and emission specifications for "mixed used" facilities, i.e., those which are "co-located"* (6 NYCRR 232.2 [b] [42]), than for "stand-alone" facilities, i.e., those which are "not co-located" (6 NYCRR 232.2 [b] [63]). During outreach sessions held in 1997 prior to the promulgation of the new regulations, respondent's staff orally represented to the dry cleaning industry that it considered a dry cleaner/laundromat facility (e.g., a combination dry cleaner and coin-operated laundromat) not sharing a common wall, floor or ceiling with any other occupancies to be a "stand-alone" facility. In a subsequent letter dated July 30, 1998 to petitioner, respondent communicated a change in its interpretation setting forth what dry cleaning facilities would be deemed co-located. The letter stated in part that: " 'Co-located' is defined at 6 NYCRR § 232.2 (b) (8) as '[s]haring a common wall, floor, or ceiling with a residence or business.' [Respondent] considers a dry cleaning facility which shares a common wall, floor or ceiling with a laundromat to be co-located. The services provided by a dry cleaner and a laundromat are sufficiently unrelated so as to constitute separate and distinct types of businesses. The fact that the same person

---

* Co-located is defined as "[s]haring a common wall, floor, or ceiling with a residence or business" (6 NYCRR 232.2 [b] [8]).

owns and/or operates the dry cleaning facility and the laundromat is not determinative of this issue."

On September 23, 1998, respondent reiterated this determination by publishing notice of it in its Environmental Notice Bulletin. To give dry cleaners/laundromats, relying on those previous oral representations, more time to meet the new requirements, respondent extended the compliance date an additional six months. Alleging that such determination adversely affected approximately 500 of its 2,000 members in this state, petitioner requested respondent (see State Administrative Procedure Act § 204; 6 NYCRR part 619) to issue a declaratory ruling "that a facility situated in an otherwise 'stand-alone' building and consisting solely of a commonly owned commercial dry cleaner and coin-operated laundromat which are separated by a common wall (hereinafter 'integrated facility') is a 'stand-alone' facility within the meaning of the [sic] 6 NYCRR 232.2 (b) (63)." Petitioner requested that respondent rescind its prior determination or, alternatively, craft a definitional exemption for small businesses (see State Administrative Procedure Act § 202-b [1] [c]), in order to minimize the adverse economic impacts, particularly the costs of installing vapor barrier enclosures around their dry cleaning machines. Following a review, including the solicitation of public comments pursuant to 6 NYCRR 619.1 (e), respondent denied the requested relief and, focusing on dry cleaner/laundromat operations, issued Declaratory Ruling DEC No. 19-11 (hereinafter the Ruling), which stated: "The dry cleaning facility component of a dry cleaner/laundromat operation which is characterized by the fact that the dry cleaning facility shares a common wall, floor, or ceiling with a self-service laundromat in which customers are allowed to use washers and/or dryers for a fee and are allowed to remain on the premises during the time that their laundry is being cleaned is co-located as defined at 6 NYCRR § 232.2 (b) (8). The services provided by a combined dry cleaning facility and laundromat operation are sufficiently unrelated so as to constitute separate and distinct businesses * * *."

Thereafter, petitioner commenced this CPLR article 78 proceeding to annul the Ruling and for a declaration that "a dry-cleaning facility offering laundromats, tuxedo rental, shoe repair, tailoring (repairs and alterations) or lawful services or products for sale operating in a stand-alone building is a stand-alone facility within the meaning of the regulation and is not co-located, and that a stand-alone building is determined solely architecturally." In dismissing the petition, Supreme Court found that the Ruling was neither arbitrary nor capricious and

rationally based. The court also rejected petitioner's claim that the Ruling "rewrote" the regulations under 6 NYCRR part 232 and further found that mandamus did not lie to compel respondent to promulgate a definitional exemption for laundromats.

Petitioner argues on this appeal that respondent's interpretation of "co-located" and, therefore, "stand-alone" is irrational. It contends that the only rational basis for determining if a facility is "co-located" is to apply a test based upon commonality of ownership/control and architecture, i.e., if the dry cleaning facility is located in an architecturally stand alone building that is not shared by any other business that is beyond a dry cleaner's control and supervision and has no common wall, floor or ceiling with an adjacent residence or business, it is not "co-located" even if it offers services such as a laundromat, tailoring or shirt laundry. In support of that position, petitioner relies upon public comments received indicating the absence of proof that short-term, incidental exposure to PERC emissions by members of the public using self-service laundromats and other services offered by dry cleaners are harmful, and comments by some people who participated in the negotiated rule-making process that claimed the Negotiated Rule Making Committee's intent was to confer co-located status only on dry cleaning facilities located in buildings with residential occupants or different commercial establishments. On the other hand, respondent contends that it is charged with promulgating and implementing a regulatory scheme to protect the public from, inter alia, air pollution (see ECL 1-0101 [1]; 3-0301 [1] [i]; [2] [a]; 19-0301 [1], [2] [a]; 19-0303). It argues that its regulatory impact statement shows that its intent in promulgating the new part 232 was to minimize the health risks to the public that are inherent in exposure to PERC emissions in the air inside residences and businesses near dry cleaners and that its interpretation of "co-located" is consistent with that intent and reasonable.

We note that because petitioner challenges respondent's interpretation of its regulations, we must apply the arbitrary and capricious standard of review, not the substantial evidence standard upon which petitioner relies in part, since the latter standard is reserved for judicial review of administrative determinations made as the result of a hearing required by law (see Matter of Jennings v New York State Off. of Mental Health, 90 NY2d 227, 239). Additionally, we must uphold respondent's interpretation of its regulations unless it is irrational and unreasonable (see Matter of Marzec v DeBuono, 95 NY2d 262, 266; Seittelman v Sabol, 91 NY2d 618, 625). We fur-

ther note that respondent's "interpretation is not rendered irrational simply because the regulation may be susceptible to a different rational interpretation" (*Matter of Elcor Health Servs. v Novello*, 295 AD2d 772, 774; *see Matter of Jennings v New York State Off. of Mental Health, supra* at 239).

Based upon this record and our deference to respondent's expertise in this area, we determine that respondent's interpretation has a "sound basis in reason" (*Matter of Pell v Board of Educ.*, 34 NY2d 222, 231), given the findings in the regulatory impact statement that PERC is a potential carcinogen and that 6 NYCRR part 232 was promulgated as a regulatory scheme to minimize the public's exposure to it. Furthermore, from a public health risk standpoint, we cannot say that it was irrational for respondent to conclude—under the particular regulatory context of 6 NYCRR part 232—that any business which, unlike a "[d]ry cleaning facility" (6 NYCRR 232.2 [b] [22]), does not utilize a "[d]ry cleaning system" (6 NYCRR 232.2 [b] [23]), but shares a common wall, floor or ceiling with a dry cleaning business to be a separate business regardless of ownership and control, and subject to the more stringent emissions containment requirements of 6 NYCRR part 232. Nor may we substitute our judgment for that of respondent (*see Paramount Communications v Gibraltar Cas. Co.*, 90 NY2d 507, 513-514).

Petitioner also contends that the Ruling constitutes unlawful rule making in violation of the State Administrative Procedure Act. The Ruling indicates that if a dry cleaning facility provides additional services that are "sufficiently related" to the operation of the dry cleaning facility, respondent will not consider the dry cleaning facility to be co-located. To determine that issue, the Ruling lists four indicia of a "sufficiently related service or activity." Petitioner argues that by announcing these indicia, the Ruling established a new rule for dry cleaners beyond 6 NYCRR part 232 which should have been promulgated in accordance with the rule-making procedure set forth in the State Administrative Procedure Act. We do not agree since, explanatory in nature, the Ruling is merely an interpretive statement (*see* State Administrative Procedure Act § 102 [2] [b] [iv]).

Finally, we are unpersuaded by petitioner's argument that respondent's refusal, when making the Ruling, to craft a definitional exemption for small dry cleaning businesses (under State Administrative Procedure Act § 202-b) from the application of 6 NYCRR part 232 was arbitrary and capricious. Notably, State Administrative Procedure Act § 204 does not provide

for the crafting of a regulatory exemption through the issuance of a declaratory ruling. In any event, contrary to petitioner's contention, respondent did consider the economic impact of the rule on small businesses in the regulatory flexibility analysis it issued prior to the adoption of 6 NYCRR part 232, however, it exercised its discretion and did not create an exemption. At that time, it noted that "almost all dry cleaning facilities are small businesses," that the size of the facility did not matter in that all dry cleaners using PERC posed potential public health and environmental risks, and that "the objectives of the proposed regulation [could not] be met by treating small dry cleaners as a separate category."

Mercure, Peters, Spain and Rose, JJ., concur. Ordered that the judgment is affirmed, without costs.