■ In the Matter of ROBERT I. RUBENFELD, Petitioner, v NEW YORK STATE ETHICS COMMISSION, Respondent. [841 NYS2d 397]—

Mercure, J.P. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent which found petitioner guilty of violating Public Officers Law § 73 (5) and assessed against him a civil penalty of $2,000.

In 2002, petitioner was the Director of Interagency Coordination for the Long Island Rail Road East Side Access Project

(hereinafter ESAP), a division of the Metropolitan Transportation Authority (hereinafter MTA). While working on ESAP, petitioner was paid by the Metro-North Railroad, where he had previously been employed, so that he could remain in the Metro-North pension system, but the MTA reimbursed Metro-North for his salary and benefits. His position with ESAP involved coordinating implementation of that project among various departments of the MTA, including Metro-North. The purpose of ESAP is to construct new tunnels under the East River that will provide the Long Island Rail Road with access to Grand Central Terminal. As relevant here, ESAP partially funded a contract between Metro-North and Washington Group International (hereinafter WGI) to build a replacement storage yard for Metro-North equipment displaced by ESAP. WGI had bid on other MTA contracts and sought to do business with other MTA subsidiaries as well.

WGI purchased a 10-seat table for $10,000 at the 2002 Friends of the Transit Museum annual gala benefit dinner, which is held to raise funds for the New York City Transit Museum, another division of the MTA. Pursuant to an unwritten policy at the MTA, private vendors who purchased tickets to the gala dinner—such as WGI—could return unneeded tickets to the Museum director, who, with the approval of the deputy executive director for community affairs at the MTA, would then distribute these "MTA tickets" randomly to MTA employees. WGI found that it did not require all 10 seats that it had purchased for the 2002 dinner but it did not return the tickets to the Museum director; instead, WGI's vice-president and general manager, Robert Harvey, called his "friend for many, many years," Howard Sackel—a contract employee who was also petitioner's supervisor—to tell him that WGI had an extra dinner ticket and to ask if Sackel needed the ticket. Sackel replied that he did not need the ticket, but if Harvey turned it over to him, he would choose an employee to sit at WGI's table. Sackel chose to give the ticket to petitioner, who had requested that Sackel notify him if he learned of any available tickets, and petitioner attended the dinner, sitting as a guest at WGI's table. Sackel indicated that he decided to distribute the ticket himself because, if he had returned it to the Museum director, there was no way to ensure that petitioner would have received it.

In July 2004, respondent sent petitioner a letter advising him that by accepting the ticket at WGI's table—which respondent initially valued at $500—he may have violated Public Officers Law § 73 (5). The relevant version of that provision dictated in pertinent part that no state employee may, "directly or

indirectly, solicit, accept or receive any gift having a value of [$75] or more . . . under circumstances in which it could reasonably be inferred that the gift was intended to influence him [or her], or could reasonably be expected to influence him [or her], in the performance of his [or her] official duties" (Public Officers Law former § 73 [5]).[1] Following a hearing, the Hearing Officer found that although petitioner did not directly solicit the ticket from WGI, he violated Public Officers Law § 73 (5) by accepting a ticket worth considerably more than $75 from a private vendor that was doing business with Metro-North and seeking additional business opportunities with the MTA. Concluding that petitioner knew he accepted a gift from a private contractor, the Hearing Officer recommended that petitioner be assessed a civil penalty in the amount of $500 pursuant to Public Officers Law former § 73 (14).[2] Respondent adopted the Hearing Officer's findings of fact and conclusions of law, but modified the recommended penalty by increasing it to $2,000. This proceeding challenging the determination ensued.

We confirm. As a quasi-judicial determination made after an evidentiary hearing, respondent's conclusion that petitioner violated Public Officers Law § 73 (5) must be sustained if supported by substantial evidence (see Matter of McCulloch v New York State Ethics Commn., 285 AD2d 236, 242-243 [2001]; Matter of Finigan v Lent, 189 AD2d 935, 936 [1993], appeal dismissed 81 NY2d 1067 [1993], lv denied 82 NY2d 657 [1993]). In that regard, "where there is room for choice, neither the weight which might be accorded nor the choice which might be made by a court are germane upon an analysis for the presence of substantial evidence before [respondent]" (300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 180 [1978]; see Matter of Rogers v Sherburne-Earlville Cent. School Dist., 17 AD3d 823, 824 [2005]). By its terms, the former Public Officers Law prohibited the acceptance or receipt of a gift valued over $75 when an intent to influence a state employee could be reasonably inferred or when the gift "could reasonably be expected to influence him [or her] in the performance of . . . official duties" (Public Officers Law former § 73 [5]). As respondent asserts, all that is required is a showing that the gift was accepted or received "under circumstances where one could reasonably

---

1. The statute was recently amended, effective April 25, 2007, to provide that the gift cannot have "more than a nominal value" (L 2007, ch 14, § 23).

2. Public Officers Law former § 73 (14) stated that "any person who knowingly and intentionally violate[d]" subdivision (5) was subject to a civil penalty of up to $10,000. Subdivision (14) has been renumbered as subdivision (18) and now indicates that the civil penalty may be up to $40,000 plus the value of the gift (L 2007, ch 14, § 27; see also Executive Law § 94 [13]).

infer a promise of influence" or reasonably expect that the employee would be influenced (*Matter of Flynn v State Ethics Commn., Dept. of State, State of N.Y.*, 87 NY2d 199, 201 [1995]). In other words, even when there is a "lack of proof that the gifts were intended to influence [an employee] in the performance of his [or her] official duties," a finding that section 73 (5) was violated will be upheld if "the acceptance was '*under circumstances in which it could be reasonably inferred*' that the gifts were made for an improper purpose" (*People v Zambuto*, 73 AD2d 828, 829 [1979] [citation omitted], quoting Public Officers Law former § 73 [5]).

Here, petitioner does not dispute that he accepted a ticket and attended the 2002 Museum gala dinner, that he did not pay for the ticket, and that the value of the ticket exceeded $75. He asserts that respondent failed to prove that he *knowingly* violated Public Officers Law former § 73 (5) because he attended the dinner with the permission of, and using a ticket provided by, Sackel for the purpose of benefitting ESAP. Petitioner maintains that under the circumstances, the ticket cannot be considered a gift. In addition, because he had no authority to award contracts to WGI, petitioner maintains that the ticket could not reasonably be expected to influence him.

Contrary to petitioner's argument that there is no evidence that he knew Sackel obtained the ticket directly from WGI rather than through the MTA, however, respondent was entitled to credit an affidavit from Harvey stating that petitioner called Harvey two days prior to the dinner, indicated that "he would be attending the gala using the WGI ticket that [Harvey] had provided to Sackel," and "thanked [Harvey] for providing a ticket for him." Moreover, petitioner's testimony that he viewed his attendance at the dinner as a work assignment from Sackel was contradicted by Sackel's testimony that the event was "one of the premier social mixers for the industry in New York" and petitioner "wanted to go," as well as Sackel's statement to the MTA Inspector General that petitioner approached him and requested a ticket. Giving due deference to respondent's credibility determinations (*see Matter of Going*, 97 NY2d 121, 124 [2001]), the foregoing constituted substantial evidence—that is, "proof . . . [from which] a conclusion or ultimate fact may be extracted reasonably[,] probatively and logically" (*300 Gramatan Ave. Assoc. v State Div. of Human Rights, supra* at 181)— for respondent's conclusion that petitioner sought to attend the dinner and knew that he was accepting the ticket as a gift from a private vendor.

Substantial evidence also supports the determination that

petitioner accepted the ticket under circumstances in which it could be reasonably inferred that the gift was made for an improper purpose. WGI had a contract with Metro-North—where petitioner remained on the payroll and a member of the pension plan—that was funded by ESAP, and WGI sought to obtain additional contracts let by the MTA—which petitioner named as his employer—or its other subsidiary agencies. Under the circumstances, a reasonable person could infer that Harvey hoped that giving the ticket to an employee managed by Sackel would result in additional WGI contracts funded by ESAP. Furthermore, petitioner's job involved resolving intraagency friction between Metro-North and other MTA agencies. Thus, it "could reasonably be expected" (Public Officers Law former § 73 [5]) that petitioner's receipt of the ticket would enhance his opinion of WGI, influencing him in his official capacity by, for example, generating good will that would inure to WGI's benefit if the company became caught up in disputes between Metro-North and other MTA subsidiaries during the performance of its contractual obligations.

We note that the determination is also consistent with respondent's long-standing interpretation of Public Officers Law § 73 (5) as forbidding the acceptance of gifts by state employees from any entity that has or seeks contracts with the state agency where the employee works, or has or seeks contracts with another state agency, when the benefits of the contract are received by the state agency where the employee works (see NY St Ethics Commn Advisory Op 94-16 [1996]).[3] Mindful that respondent's interpretation of a statute that it is charged with administering is entitled to deference if it is not irrational (see e.g. Matter of Schneider v Bress, 194 AD2d 36, 38 [1993], lv denied 83 NY2d 759 [1994]; Matter of John v New York State Ethics Commn., 178 AD2d 51, 55 [1992], lv denied 80 NY2d 753 [1992]), we can discern no error in respondent's reliance on its own interpretation of the statute in finding that an improper purpose may be inferred here. Nor can we deem irrational respondent's determination that gifts to state agency employees from private entities that have or seek contracts with those agencies violate the statute. As noted above, "proof that the gifts were intended to influence [an employee] in the perfor-

---

**3.** Contrary to petitioner's argument that respondent relied solely on New York State Ethics Commission Advisory Opinion 94-16 (1996) and concluded that the actual circumstances under which he attended the dinner were irrelevant, the Hearing Officer—whose decision was incorporated into respondent's determination—concluded that under the circumstances of the case, respondent "need not rely exclusively on Advisory Opinion No. 94-16 to prove that [petitioner] accepted a gift under circumstances intended to influence him."

mance of his [or her] official duties" is not required to establish a violation of section 73 (5); all that is required is that "the acceptance was *'under circumstances in which it could be reasonably inferred'* that the gifts were made for an improper purpose" (*People v Zambuto*, 73 AD2d 828, 829 [1979], *supra* [citation omitted], quoting Public Officers Law former § 73 [5]). This rule—that proof of actual intent to influence is not required—is in keeping with the statutory purpose of deterring "[f]avoritism and the potential for conflicts of interest, *as well as the mere appearance of such*, [which] serve to weaken and erode the public's trust and confidence in government" (Governor's Program Bill Mem, Bill Jacket, L 1987, ch 813, at 9 [emphasis added]). The Legislature chose to effectuate this purpose by strengthening the "prohibitions against behavior which may permit *or appear to permit undue influence or conflicts of interest*" (*id.* [emphasis added]). In our view, it cannot be said that respondent acted irrationally in concluding that an appearance of undue influence, favoritism or conflict of interest may be inferred when a private entity that seeks to contract with a state agency makes gifts to employees of that agency.

In short, because substantial evidence supports respondent's determination that petitioner knew he was accepting the gala ticket from WGI and that the gift was given under circumstances where an improper purpose could reasonably be inferred, we will not disturb that determination. Petitioner's remaining arguments do not require extended discussion. His argument that respondent was required to prove that he subjectively believed it was wrong to accept the WGI ticket is not supported by either the language of the statute or the case law interpreting it (*see* Public Officers Law former § 73 [5]; *Matter of Flynn v State Ethics Commn., Dept. of State, State of N.Y.*, 87 NY2d 199, 201 [1995], *supra*; *People v Zambuto, supra* at 829; *cf. Arthur Andersen LLP v United States*, 544 US 696, 704-706 [2005]). Nor has petitioner suffered "stigma plus" as a result of respondent's determination, implicating his liberty interests (*see Matter of Agnew v North Colonie Cent. School Dist.*, 14 AD3d 830, 831 [2005]; *Matter of Board of Educ. of City School Dist. of City of N.Y. v Mills*, 293 AD2d 37, 39 [2002]). Finally, in determining whether the penalty of $2,000 imposed here was excessive, we note that this Court may not "substitute[ ] its own judgment" for that of respondent "in weighing the facts and their implications against [petitioner's] service record" (*Matter of Kelly v Safir*, 96 NY2d 32, 39 [2001]). Rather, because the penalty is not " 'so disproportionate to the offense as to be shocking to one's sense of fairness,' thus constituting an abuse of discretion as a matter of law," it must be upheld (*id.* at 38 [citation omitted]).

Spain, Mugglin and Kane, JJ., concur.

Carpinello, J. (concurring in part and dissenting in part). In my opinion, the $2,000 civil penalty imposed in this case is so disproportionate to the offense as to shock one's sense of fairness; therefore, I respectfully dissent on this issue (*see Matter of Kelly v Safir*, 96 NY2d 32, 38 [2001]). It is uncontroverted that the actual cost of the subject dinner was $150 and that persons or entities who purchased tickets at prices in excess of that amount were entitled to a charitable tax deduction for the difference. Indeed, the whole purpose of the event was to raise funds for the nonprofit New York City Transit Museum.

Moreover, even if petitioner accepted the ticket under circumstances which constituted a violation of the Public Officers Law, my review of the record supports the conclusion that he did so unintentionally, partially at the encouragement of his supervisor and with the intent of aiding his employer. I find no proof whatsoever of any "grave moral turpitude [or] grave injury to the agency involved or to the public weal" sufficient to justify such an obscene fine (*Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 235 [1974]). I would thus remit the matter to respondent for imposition of a $300 fine (twice the cost of the ticket), a sum more reasonably related to the value of the gift conferred. Adjudged that the determination is confirmed, without costs, and petition dismissed.