(August 21, 2009)

■ In the Matter of CARMELLA BARBATO, Petitioner, v NEW YORK STATE DEPARTMENT OF HEALTH et al., Respondents. [884 NYS2d 525]—

Proceeding pursuant to CPLR article 78 (transferred to the Appellate Division of the Supreme Court in the Fourth Judicial

Department by order of the Supreme Court, Herkimer County [Michael E. Daley, J.], entered October 21, 2008) to review a determination of respondent New York State Department of Health. The determination found after a fair hearing that petitioner was currently ineligible for medical assistance benefits.

It is hereby ordered that the determination is unanimously modified on the law and the petition is granted in part by annulling that part of the determination finding petitioner ineligible for medical assistance benefits between the date on which the personal service agreement was executed and the date on which the determination of respondent Herkimer County Department of Social Services was made and as modified the determination is confirmed without costs, and the matter is remitted to respondent Herkimer County Department of Social Services for further proceedings in accordance with the following memorandum: Petitioners each commenced a CPLR article 78 proceeding challenging the respective determinations of respondent New York State Department of Health upholding the findings of the Departments of Social Services of Oneida County and Herkimer County that petitioners were currently ineligible for medical assistance benefits because they transferred assets for less than fair market value during the "look-back" period set forth in Social Services Law § 366 (5) (e). Pursuant to personal service agreements (PSAs) between petitioners and their respective caregivers, the caregivers agreed to perform certain personal services for petitioners for the remainder of each petitioner's lifetime in exchange for a bulk transfer of assets to the caregiver. The parties to those agreements stipulated that the amount transferred constituted the fair market value of the personal services, which was determined by multiplying the hourly cost of the services, which ranged from $12 to $15 per hour, by both the estimated number of hours per week that they would be performed and the life expectancy of each petitioner. The life expectancy of each petitioner was determined based on a chart published by the New York State Department of Health. The PSA involving Carmella Barbato, the petitioner in the first of the proceedings before us, provides that the caregiver is to perform services for "at least" 15 hours per week, while the PSAs in the four remaining proceedings provide for services for those petitioners on an "as needed" basis. All of the PSAs provide that there is to be no refund to the estate of any of the five petitioners who dies before the end of his or her projected life expectancy.

In reviewing a Medicaid eligibility determination made after a

fair hearing, "the court must review the record, as a whole, to determine if the agency's decisions are supported by substantial evidence and are not affected by an error of law" (*Matter of Gabrynowicz v New York State Dept. of Health*, 37 AD3d 464, 465 [2007] [internal quotation marks omitted]; *see Matter of Rogers v Novello*, 26 AD3d 580, 581 [2006]). Substantial evidence is "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or [an] ultimate fact" (*300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176, 180 [1978]). "The petitioner[s] bear[ ] the burden of demonstrating eligibility" (*Gabrynowicz*, 37 AD3d at 465; *see Rogers*, 26 AD3d at 581).

Contrary to petitioners' contentions, substantial evidence supports the determination in each proceeding that the transfer of assets for services to be rendered between the time of the determinations of the respective Departments of Social Services through the remainder of the lifetime of each petitioner was for less than fair market value. With respect to the proceedings involving PSAs containing the aforementioned "as needed" language, those petitioners cannot demonstrate that the transfer of assets for prospective services was for fair market value, because there is no basis upon which to conclude that the transfer of a specific amount of assets for services that may or may not be rendered is for fair value. Moreover, given the absence of a refund provision in any of the PSAs in question, the possibility remains that a caregiver will receive a windfall in the event that the respective petitioner fails to meet his or her life expectancy, and it thus cannot be said that the subject transfers were for fair market value. We conclude, however, that the determinations fail to account for the fair market value of services rendered between the date on which each PSA was executed and the date on which the respective determinations were made. We therefore modify the determination in each proceeding accordingly.

In our view, substantial evidence supports the determinations that services provided by caregivers that are duplicative of services afforded petitioners by the nursing facilities in which they reside are noncompensable for the purpose of calculating the relevant periods during which petitioners are ineligible for medical assistance benefits (*see Gabrynowicz*, 37 AD3d at 465; *see generally Estate of Barnett v Department of Health & Human Servs.*, 2006 WL 1668138, 2006 Me Super LEXIS 116 [2006]; *cf. Gold v United Health Servs. Hosps.*, 95 NY2d 683, 690-691 [2001]; *Matter of Chase v New York State Dept. of Social Servs.*, 252 AD2d 612, 613 [1998], *lv denied* 92 NY2d 813 [1998]).

Inasmuch as service logs kept by the caregivers for each petitioner are included in the record, the aforementioned duplicative services may be identified, and the services provided distinguished from those yet to be provided. Moreover, the fair market value of the nonduplicative services performed may be determined and used in calculating each of the periods during which petitioners are ineligible for medical assistance benefits. We therefore remit the matters to the respective Departments of Social Services to determine the eligibility of petitioner for medical assistance benefits between the date on which each PSA was executed and the date on which the respective determinations were made following recalculation of the period set forth in Social Services Law § 366 (5). We further note that the determination of the issue whether certain services are duplicative of those provided by the nursing facilities may be facilitated by reference to the standards for services in such facilities set forth in 10 NYCRR 415.1 through 415.27. Present—Hurlbutt, J.P., Martoche, Fahey, Carni and Pine, JJ.