■ In the Matter of COMMUNITY RELATED SERVICES, INC., Petitioner, v KAREN M. CARPENTER-PALUMBO, as Commissioner of Alcohol and Substance Abuse Services, et al., Respondents.
[923 NYS2d 261]—

Egan Jr., J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Commissioner of Alcoholism and Substance Abuse Services which, among other things, revoked petitioner's operating certificate.

Petitioner was certified in 1998 by respondent Office of Alcoholism and Substance Abuse Services (hereinafter OASAS) as an alcohol and substance abuse counseling treatment facility to provide substance abuse treatment services. As a facility certified by OASAS, petitioner was subject to regular inspections and recertification reviews to ensure its compliance with the provisions of 14 NYCRR (Department of Mental Hygiene). In late 2005 or early 2006, petitioner came to the attention of OASAS's Bureau of Enforcement because its Medicaid billing patterns, reserve for uncollectible Medicaid billings, length of patient stay and number of patient visits per year, among other factors, were allegedly significantly different than that of similar facilities. As a result, OASAS began an investigation of petitioner to determine whether the facility was operating in compliance with applicable laws, rules and regulations. At the

conclusion of its investigation, OASAS found petitioner to be in violation of, among other things, 45 sections of 14 NYCRR (Department of Mental Hygiene). In September 2006, OASAS advised petitioner of its findings as well as its intention to revoke petitioner's operating certificate and impose fines for such violations. Petitioner responded through counsel and, thereafter, in late October 2006, OASAS's investigators revisited petitioner's facility. Upon finding no improvements to petitioner's practices, in November 2006, OASAS revoked petitioner's operating certificate and imposed fines in excess of $16 million. Petitioner thereafter requested a hearing pursuant to Mental Hygiene Law § 32.21 to challenge OASAS's determination.

After a multi-day administrative hearing conducted between April and July 2008 to review the decision and order of OASAS, the Hearing Officer issued a report and recommendations that found petitioner in violation of 33 sections of 14 NYCRR (Department of Mental Hygiene) and recommended revocation of its operating certificate and the imposition of fines for those violations occurring after December 2003, the date of petitioner's last recertification inspection. In December 2006, respondent Commissioner of Alcoholism and Substance Abuse Services adopted the report and recommendations of the Hearing Officer, revoked petitioner's operating certificate and imposed fines in the amount of $492,800. Petitioner thereafter commenced the instant proceeding pursuant to CPLR article 78, which was then transferred to this Court by order of Supreme Court (see CPLR 7804 [g]).*

Petitioner first argues that it should have been afforded an opportunity to implement a corrective action plan (hereinafter CAP) to cure any deficiencies found before its operating certificate was revoked. With regard to chemical dependence treatment facilities such as petitioner, the Mental Hygiene Law provides the Commissioner with the power "to conduct investigations into the operations of providers of services . . . and to make inspections and examine records . . . to determine whether such providers of services are complying with the provisions of this chapter and applicable laws, rules, and regulations" (Mental Hygiene Law § 32.13). Furthermore, pursuant to Mental Hygiene Law § 32.21 (a), all that is required to be provided to the certificate holder before any determination is made is notice and an opportunity to be heard. Upon a determi-

---

* Although this proceeding was properly transferred to this Court, inasmuch as petitioner does not raise a substantial evidence challenge in its brief, we deem any issue in this regard to be abandoned (see Matter of Edwards v Goord, 11 AD3d 832, 833 n [2004]).

nation that the holder has failed to comply with the terms of its operating certificate or with the provisions of any applicable statute, rule or regulation (*see* Mental Hygiene Law § 32.21 [a]), the Commissioner has the power to "revoke, suspend, or limit an operating certificate" (Mental Hygiene Law § 32.21 [a]), and to "impose a fine of up to [$1,000]" (Mental Hygiene Law § 32.21 [b]). In this matter, OASAS conducted an investigation of petitioner pursuant to Mental Hygiene Law § 32.13. Nothing in that statute provides that a facility under such an investigation, such as petitioner, be permitted to implement a CAP, and the failure of the Legislature to include it within the statute is an indication that its exclusion was intended (*see Pajak v Pajak*, 56 NY2d 394, 397 [1982]; *Matter of Collins v Dukes Plumbing & Sewer Serv., Inc.*, 75 AD3d 697, 699 [2010], *lv granted* 15 NY3d 713 [2010]). While the Commissioner has promulgated 14 NYCRR 810.14, which, with respect to certain biannual "Inspection and Reviews," provides that "[t]he on-site review process shall include appropriate reporting and corrective action follow-up subsequent to the review" (14 NYCRR 810.14 [f]), those regulations are not applicable to this proceeding because the investigation conducted by OASAS of petitioner was not an inspection or review as defined by 14 NYCRR 810.14 (*see* 14 NYCRR 810.14 [a], [b] [1]-[5]). Accordingly, and in noting that the Commissioner's interpretation of statutes and regulations that she is charged with administering is entitled to deference if it is not irrational or unreasonable (*see Matter of Posada v New York State Dept. of Health*, 75 AD3d 880, 882 [2010], *lv denied* 15 NY3d 712 [2010]; *Matter of Rubenfeld v New York State Ethics Commn.*, 43 AD3d 1195, 1199 [2007]; *Matter of Neighborhood Cleaners Assn.-Intl. v New York State Dept. of Envtl. Conservation*, 299 AD2d 790, 792 [2002]), we discern no error in the Commissioner's determination that the provisions of 14 NYCRR 810.14 pertaining to CAPs do not apply to investigations such as the one conducted in this case. We are also unpersuaded by petitioner's argument that either 14 NYCRR 810.15, 1010.8 or 1010.9 requires that petitioner have an opportunity to implement a CAP after an investigation conducted pursuant to Mental Hygiene Law § 32.13. 14 NYCRR 810.15 specifically provides that, other than for deficiencies found as a result of an inspection made pursuant to 14 NYCRR 810.14 (b), upon written notice an operating certificate may be revoked "at any time" (14 NYCRR 810.15 [a]) based on the provider's "fail[ure] to operate in compliance with any applicable law, rule or regulation" (14 NYCRR 810.15 [a] [7]).

Next, we reject petitioner's assertion that it was penalized for failing to correct any deficiencies when OASAS's investigators

returned to the facility in late October 2006. While the Hearing Officer indeed noted that petitioner had taken no steps to modify its practices after receiving notice of its deficiencies, a review of the entirety of the Hearing Officer's report and recommendations confirms that his findings and conclusions are based on petitioner's violation of regulations, rather than on any failure to correct those violations after receiving notice thereof. We also find no merit to petitioner's argument that the Hearing Officer's determination improperly relied on hearsay documents, including work sheets prepared during the course of the investigation by OASAS's investigators—two of whom testified at the hearing (*see Matter of Sookhu v Commissioner of Health of State N.Y.*, 31 AD3d 1012, 1014 [2006]; *Matter of Tsakonas v Dowling*, 227 AD2d 729, 730 [1996], *lv denied* 88 NY2d 812 [1996]; *Matter of Anderson v Bane*, 199 AD2d 708, 710 [1993]; *Matter of Blake v Mann*, 145 AD2d 699, 701 [1988], *affd* 75 NY2d 742 [1989]). We are likewise unpersuaded by petitioner's argument that the Hearing Officer improperly relied on 14 NYCRR 822.11 (k)—a regulation that provides standards designed to limit excessive outpatient services and that was not in effect until after petitioner's certificate was already revoked (*see* 14 NYCRR 822.11 [eff Dec. 27, 2006]). Here, petitioner was found chargeable with violations regarding facilities requirements (*see* 14 NYCRR 814.3), general service standards (*see* 14 NYCRR 822.2), admission and post-admission procedures (*see* 14 NYCRR 822.3, 822.4), record keeping (*see* 14 NYCRR 822.5), quality improvement and utilization review (*see* 14 NYCRR 822.6), staffing (*see* 14 NYCRR 822.7) and additional requirements applicable to services that provide compulsive gambling treatment (*see* 14 NYCRR 822.10). While in conjunction with his determination regarding counselor compensation levels the Hearing Officer referred to 14 NYCRR 822.11 (k), there was no charge, let alone a determination, that petitioner violated that regulation, nor was there any indication that section 822.11 was retroactively applied.

Petitioner next contends that the Commissioner's determination to revoke the operating certificate without according petitioner the opportunity to implement corrective measures violates its substantive due process rights. While we agree that petitioner had a protected property interest in its operating certificate (*see generally St. Joseph Hosp. of Cheektowaga v Novello*, 43 AD3d 139, 143 [2007], *appeal dismissed* 9 NY3d 988 [2007], *lv denied* 10 NY3d 702 [2008]; *Honey Dippers Septic Tank Servs. v Landi*, 198 AD2d 402, 403 [1993]), petitioner has failed to demonstrate " 'that the governmental action was wholly without legal justification' " (*Matter of Collins v Dukes Plumb-*

*ing & Sewer Serv., Inc.*, 75 AD3d at 702, quoting *Bower Assoc. v Town of Pleasant Val.*, 2 NY3d 617, 627 [2004]). OASAS's investigation was prompted, in part, by petitioner's billing practices, the excessive length of patient stay and number of patient visits, among other things, which resulted in petitioner being the "largest outpatient clinic provider in the system" for Medicaid billing purposes when compared to similar facilities. Furthermore, in conjunction with the investigation and ultimate determination, petitioner was provided with the requisite notice and an opportunity to be heard pursuant to Mental Hygiene Law § 32.21 (a) (*see Testwell, Inc. v New York City Dept. of Bldgs.*, 80 AD3d 266, 274 [2010]; *Matter of Tyler v New York State Commr. of Motor Vehs.*, 284 AD2d 645, 646 [2001]; *Torres v New York City Taxi & Limousine Commn.*, 268 AD2d 340 [2000]).

Nor do we find that petitioner's equal protection rights were violated based on selective enforcement. Petitioner argues that OASAS improperly conducted an investigation of petitioner by using the same policies and procedures used to conduct a recertification review, but without the opportunity to implement a CAP. An equal protection violation based upon selective enforcement arises where "*first,* a person (compared with others similarly situated) is selectively treated and *second,* such treatment is based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person" (*Bower Assoc. v Town of Pleasant Val.*, 2 NY3d at 631; *see Matter of Ken Mar Dev., Inc. v Department of Pub. Works of City of Saratoga Springs*, 53 AD3d 1020, 1024 [2008]; *Matter of Gray v Town of Oppenheim*, 289 AD2d 743, 745 [2001], *lv denied* 98 NY2d 606 [2002]). Given that petitioner does not allege selective treatment based on race, religion or punishment for the exercise of constitutional rights, it must demonstrate that OASAS singled out petitioner for an investigation with malevolent intent (*see Bower Assoc. v Town of Pleasant Val.*, 2 NY3d at 631). In this case, there is no proof that petitioner was treated differently than other similarly situated facilities—in terms of other facilities having been the subject of an investigation pursuant to Mental Hygiene Law § 32.13 but, unlike petitioner, were treated more favorably in that they were provided with the opportunity to implement a CAP before penalties were imposed (*see id.* at 632). Furthermore, the requisite showing of improper motivation is lacking. Petitioner's billing practices, length of patient stay and number of patient visits, among other things, provided a rational basis for the investigation, such that petitioner failed to establish a violation of its equal protection

rights (*see Matter of Gray v Town of Oppenheim*, 289 AD2d at 745).

To the extent that petitioner argues that the Hearing Officer arbitrarily disregarded the testimony of its experts, we note that "matters of credibility and the weight to be accorded an expert's testimony is solely within the province of the [administrative fact finder]" (*Matter of Forester v State Bd. for Professional Med. Conduct*, 36 AD3d 1127, 1128 [2007], *lv denied* 8 NY3d 812 [2007]). Furthermore, in light of the regulations, which provide that outpatient services shall "promote the achievement and maintenance of abstinence and recovery from chemical dependence and abuse" (14 NYCRR 822.2 [b] [1]), we are unpersuaded that the Hearing Officer substituted his own opinion for that of an expert when he rejected certain testimony that a substance abuse addict should remain in treatment for the rest of his or her life. Finally, given the multitude of violations found, we find that the penalty of revocation of petitioner's operating certificate was not "so disproportionate to the offense as to be shocking to one's sense of fairness, thus constituting an abuse of discretion" (*Matter of Kelly v Safir*, 96 NY2d 32, 38 [2001] [internal quotation marks omitted]; *see Matter of Rubenfeld v New York State Ethics Commn.*, 43 AD3d at 1200; *Matter of Sookhu v Commissioner of Health of State of N.Y.*, 31 AD3d 1012, 1014 [2006]; *Matter of Rogers v Sherburne-Earlville Cent. School Dist.*, 17 AD3d 823, 824 [2005]; *Matter of Alaimo v Ambach*, 91 AD2d 695, 696 [1982], *lv denied* 58 NY2d 607 [1983]).

Spain, J.P., Lahtinen and Garry, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.