■ In the Matter of SHARON SWARTZ, Also Known as SHARON TOWNSEND, Individually and as Administrator of the Estate of KENNETH SWARTZ, Deceased, Petitioner, v NEW YORK STATE DEPARTMENT OF HEALTH et al., Respondents. [946 NYS2d 698]—

Malone Jr., J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Broome County) to review a determination of respondent Department of Health which denied Kenneth Swartz's request for Medicaid assistance.

In October 2006, petitioner moved into her parents' home to care for them and, on November 6, 2006, she, her father (here-

inafter decedent) and her mother signed a "Personal Services-Care Agreement," pursuant to which petitioner was to act as a personal care aide, homemaker/housekeeper and a companion for her parents on a 24-hour basis. The contract required petitioner to maintain contemporaneous records of the dates and nature of all of the services that she provided and, in exchange for those services, petitioner was to be paid on an hourly basis at a rate of $17, $16.50 or $15.50, depending on the type of service provided. Petitioner provided services to her parents until decedent entered a nursing home in April 2007.[1] Because petitioner had never received any pay pursuant to the contract, when decedent's house was sold in February 2008, she received $51,940.50 out of the profits of the sale, representing the amount she claimed was owed to her under the contract.

Meanwhile, decedent had applied for Medicaid assistance upon his admission to the nursing home facility. His application was denied by the Broome County Department of Social Services (hereinafter the agency) on the basis that his eligibility was subject to a penalty period of 5.8 months due to certain transfers of assets, including the transfer to petitioner after the sale of his house, which had been made during the applicable "look-back" period. Specifically, the agency determined that, although $51,940.50 had been transferred to petitioner, the fair market value of the services that she provided—and for which she could provide detailed contemporaneous documentation—was $15,883.76, leaving a disqualifying transfer amount of $36,056.74. Decedent requested a hearing, following which respondent Department of Health (hereinafter respondent) upheld the agency's determination. Petitioner thereafter commenced this proceeding challenging respondent's determination, which was transferred to this Court by order of the Supreme Court.[2]

Petitioner bears the burden of establishing eligibility for Medicaid benefits and respondent's determination in that regard will not be disturbed so long as it is supported by substantial evidence in the record (*see Matter of Barbato v New York State Dept. of Health*, 65 AD3d 821, 823 [2009], *lv denied* 13 NY3d 712 [2009]; *Matter of Rogers v Novello*, 26 AD3d 580, 581 [2006]). It is well settled that certain transfers of assets for less than fair market value during the applicable look-back period

---

**1.** Apparently, petitioner's mother died sometime before April 2007.

**2.** Petitioner commenced the proceeding individually and as power of attorney for decedent. After decedent died during the pendency of this proceeding, Supreme Court "substituted" (*see generally* CPLR 1015, 1021) petitioner in her fiduciary capacity as administrator of decedent's estate.

renders an applicant ineligible for nursing facility benefits (see Social Services Law § 366 [5]; *Matter of Rogers v Novello*, 26 AD3d at 581).

In this case, substantial evidence supports respondent's determination that decedent transferred more than $36,000 in assets to petitioner for less than fair market value and was, therefore, ineligible for benefits for a period of 5.8 months. Although petitioner contends that respondent improperly disallowed credit for services that she rendered during nighttime hours, the record contains no detailed contemporaneously-prepared records documenting the services that she allegedly provided each night of the week between the hours of 10:45 P.M. and 6:00 A.M. Instead, petitioner maintained a general care plan that did not contain any specific information regarding the services that were allegedly provided during that time period each night. Accordingly, respondent's determination to disallow those hours in its calculation of the fair market value of the services that petitioner provided is supported by substantial evidence in the record.

With respect to the hours of service for which respondent credited petitioner, substantial evidence supports respondent's determination to disallow petitioner's claimed hourly rate of $15.50, which she alleged was the rate a local home healthcare agency would have charged for those services in 2009. According to the testimony of an examiner from the agency and statistics compiled by the US Department of Labor, the mean hourly wage rate for a personal home healthcare aide in this state was $9.22. This conflicting evidence regarding the appropriate wage rate to be applied presented a credibility determination for respondent to resolve, and we perceive no basis upon which to disturb its decision to apply the lower rate of pay (*see generally Matter of Community Related Servs., Inc. v Carpenter-Palumbo*, 84 AD3d 1450, 1455 [2011], *lv denied* 17 NY3d 717 [2011]).

To the extent not specifically addressed, petitioner's remaining contentions have been considered and found to be without merit.

Rose, J.P., Stein, Garry and Egan Jr., JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.