# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**973**

**TP 12-00443**

PRESENT: FAHEY, J.P., PERADOTTO, CARNI, AND SCONIERS, JJ.

---

IN THE MATTER OF VIOLET A. HALL, PETITIONER,

V                                    MEMORANDUM AND ORDER

NIRAV R. SHAH, M.D., COMMISSIONER, NEW YORK
STATE DEPARTMENT OF HEALTH, AND PHILIP BAUSO,
DIRECTOR, CAYUGA COUNTY HUMAN SERVICES, MEDICAID
DIVISION, RESPONDENTS.

---

MENTER, RUDIN & TRIVELPIECE, P.C., SYRACUSE (JOSEPHINE YANG-PATYI OF
COUNSEL), FOR PETITIONER.

ERIC T. SCHNEIDERMAN, ATTORNEY GENERAL, ALBANY (KATE H. NEPVEU OF
COUNSEL), FOR RESPONDENT NIRAV R. SHAH, M.D., COMMISSIONER, NEW YORK
STATE DEPARTMENT OF HEALTH.

--------------------------------------------------------------------------------

Proceeding pursuant to CPLR article 78 (transferred to the
Appellate Division of the Supreme Court in the Fourth Judicial
Department by order of the Supreme Court, Cayuga County [Thomas G.
Leone, A.J.], entered February 27, 2012) to review a determination of
the New York State Department of Health.  The determination found that
petitioner was eligible for chronic care Medicaid benefits as of July
1, 2009.

It is hereby ORDERED that the determination is unanimously
confirmed without costs and the petition is dismissed.

Memorandum:  Petitioner commenced this CPLR article 78 proceeding
challenging the determination of the New York State Department of
Health (DOH) after a hearing that she was not eligible for chronic
care Medicaid benefits (Medicaid benefits) until July 1, 2009.  The
DOH's determination modified the determination of Cayuga County Human
Services (agency) that petitioner was not eligible for Medicaid
benefits until August 1, 2009.  The matter was transferred to this
Court pursuant to CPLR 7804 (g).

Petitioner contends that she was not required to submit a
Medicaid application in order to receive Medicaid benefits because she
had previously provided the agency with an attestation of her
resources as part of her application for Medicare Savings Program
benefits, which she had been receiving since February 2003.  We reject
that contention.  "In reviewing a Medicaid eligibility determination
made after a fair hearing, [a] court must review the record, as a
whole, to determine if the agency's decisions are supported by

substantial evidence and are not affected by an error of law" (*Matter of Barbato v New York State Dept. of Health*, 65 AD3d 821, 822-823, *lv denied* 13 NY3d 712 [internal quotation marks omitted]; *see Matter of Peterson v Daines*, 77 AD3d 1391, 1392-1393).  Where, as here, there is an issue concerning an agency's application of Medicaid regulations and directives, "the fact that the agency's interpretation might not be the most natural reading of [its] regulation [or directive], or that the regulation [or directive] could be interpreted in another way, does not make the interpretation irrational" (*Matter of Sisters of Charity Hosp. v Daines*, 84 AD3d 1757, 1758, *lv denied* 87 AD3d 1415 [internal quotation marks omitted]).

Insofar as relevant here, the regulations that govern eligibility for medical assistance provide that "[a]ll departmental regulations relating to public assistance and care apply to medical assistance except those that are inconsistent with the laws and regulations governing the medical assistance program" (18 NYCRR 360-1.2).  Those regulations further provide that persons applying for such assistance "must complete and sign a State-prescribed form," i.e., a Medicaid application (18 NYCRR 360-2.2 [d] [1]).  In support of her contention that she was not required to submit a Medicaid application, petitioner relies on 18 NYCRR 350.4 (b), which pertains to eligibility for public assistance generally and states that "[t]he State-prescribed form is not required to be completed under the following circumstances:  For a person continuously in receipt of some form of assistance or care from the same district, the application form completed at the time of original application will suffice.  Transfers or reclassifications, except as required under subdivision (a) of this section, need not be confirmed by completion of a new State-prescribed form."  The DOH determined that section 350.4 (b), which relates to public assistance, is inconsistent with section 360-2.2 (d) (1) because the latter section, which relates to medical assistance, contains no exceptions.  The DOH thus determined that, pursuant to section 360-1.2, the medical assistance regulation controls.  We cannot say that the DOH's interpretation of those regulations is irrational (*see Sisters of Charity Hosp.*, 84 AD3d at 1758).  We thus conclude that the DOH's determination that petitioner was required to submit a formal Medicaid application in order to receive Medicaid benefits was "not arbitrary and capricious, or irrational, and is therefore entitled to deference" (*Matter of Elcor Health Servs. v Novello*, 100 NY2d 273, 276).

We reject petitioner's further contention that the effective date of her benefits should be May 22, 2008, the date when the nursing home sent a letter to the agency with supporting documentation for petitioner's Medicaid application.  According to petitioner, that was the date when the agency received "process" concerning petitioner's need for Medicaid benefits.  The Medicaid Reference Guide (MRG) provides that "[t]he date of application is the date that a signed State-prescribed application form, or a State-approved equivalent form *or process* is received by the facilitated enroller or the local district" (emphasis added).  The DOH has interpreted that language to mean that "process" must be "State-approved," and the DOH therefore determined that the 2008 letter did not constitute "process" as that term is used in the MRG.  We conclude that such an interpretation is

reasonable.

We also reject petitioner's contention that, under the MRG, the agency was required to treat the date of her Medicaid application as the date the agency received notice of her request for Medicaid benefits, i.e., May 22, 2008, and thus that the agency was required to treat that date as the effective date of her Medicaid benefits.  The relevant portion of the MRG provides that, "[i]f a *recipient* who attested to his/her resources subsequently requests coverage for long-term care services, the date of the request shall be treated as the date of the new application for purposes of establishing the effective date and the three-month retroactive period for increased coverage" (emphasis added).  As the DOH determined, petitioner was not a recipient of Medicaid as of May 2008 and consequently that provision does not apply to her.  Indeed, petitioner's 2003 application for benefits clearly indicates that it was for Medicare Savings Program benefits only.  We therefore conclude that the DOH's determination that petitioner was not eligible for chronic care Medicaid benefits as of May 2008 is supported by substantial evidence.

Finally, we conclude that the DOH did not err in rejecting petitioner's contention that she and the nursing home reasonably relied on the agency's representations that petitioner had a pending Medicaid application as of May 22, 2008 and that the agency did not notify either petitioner or the nursing home prior to June 2009 that a Medicaid application was required.  To the extent that petitioner's contention amounts to an estoppel argument, "estoppel generally 'cannot be invoked against a governmental agency to prevent it from discharging its statutory duties' " (*Matter of Shelton v Wing*, 256 AD2d 1143, 1144, quoting *Matter of New York State Med. Transporters Assn. v Perales*, 77 NY2d 126, 130).  In any event, we conclude that the DOH's rejection of petitioner's reasonable reliance argument is "supported by substantial evidence and [is] not affected by an error of law" (*Barbato*, 65 AD3d at 823 [internal quotation marks omitted]).  The agency presented evidence that, on May 28, 2008 and February 24, 2009, it sent letters to petitioner's son indicating that the enclosed Medicaid application required completion.  Although the wife of petitioner's son, who is petitioner's power of attorney, denied that she received those letters, the DOH discredited that testimony.  "Issues of witness credibility are . . . for the administrative agency to resolve in the exercise of its exclusive fact-finding authority" (*Matter of Barhite v Village of Medina*, 23 AD3d 1114, 1115).

Entered:  November 9, 2012                    Frances E. Cafarell
                                              Clerk of the Court