◼ In the Matter of M. Paula Mallery, Petitioner, v Nirav R. Shah, as Commissioner of Health, Respondent. [939 NYS2d 626]—

Stein, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Broome County) to review a determination of respondent which found petitioner ineligible for Medicaid benefits for a certain period of time.

After falling in her home in March 2009, petitioner was admitted to a skilled nursing facility which applied for Medicaid on her behalf. The Broome County Department of Social Services (hereinafter DSS) ultimately found petitioner ineligible for nursing home coverage for a penalty period of approximately 19 months based upon transfers of assets for less than fair market value to petitioner's friend and attorney-in-fact, Ron Stanton, within the 60-month "look-back" period under Social Services Law § 366 (5) (e) (1) (vi). Respondent affirmed that determination after a fair hearing. Petitioner then commenced this proceeding pursuant to CPLR article 78 asserting that respondent's determination was arbitrary and capricious and affected by an error of law or, alternatively, was not supported by substantial evidence. After finding that respondent's determination was not affected by an error of law, Supreme Court (Tait, J.) transferred the proceeding to this Court (*see* CPLR 7804 [g]).

We confirm. In reviewing a Medicaid eligibility determination rendered after a hearing, this Court must "review the record, as a whole, to determine if the agency's decisions are supported by substantial evidence and are not affected by an error of law" (*Matter of Campbell v Commissioner of N.Y. State Dept. of Health*, 14 AD3d 766, 768 [2005]; *accord Matter of Loiacono v Demarzo*, 72 AD3d 969, 969 [2010]; *Matter of Rogers v Novello*, 26 AD3d 580, 581 [2006]). Pursuant to Social Services Law § 366 (5) (e) (3), "any transfer of an asset by [an] individual . . . for less than fair market value made within or after the look-back period shall render the individual ineligible for nursing facility services." Petitioner bears the burden of proving eligibility (*see Matter of Campbell v Commissioner of N.Y. State Dept. of Health*, 14 AD3d at 768). Specifically, petitioner must " 'rebut the presumption that the transfer of funds was motivated, in part if not in whole, by . . . anticipation of a future need to qualify for medical assistance' " (*Matter of Loiacono v Demarzo*, 72 AD3d at 970, quoting *Matter of Carter v Brandwein*, 182 AD2d 620, 621 [1992]; *see Matter of Campbell v Commissioner of N.Y. State Dept. of Health*, 14 AD3d at 767). Thus, unless a petitioner is able to show that a transfer of assets falls within a statutory or regulatory exception, such transfer for less than fair market value will result in a penalty period of ineligibility (*see Matter of Rogers v Novello*, 26 AD3d at 581).

Here, petitioner concedes that she transferred certain assets during the 60-month "look-back" period immediately preceding the date she entered a nursing home and applied for medical assistance benefits (*see* Social Services Law § 366 [5] [e] [1] [vi]; [3]). However, she asserts that all such transactions fall within the scope of a statutory exception in that the assets were "transferred exclusively for a purpose other than to qualify for medical assistance" (Social Services Law § 366 [5] [e] [4] [iii] [B]), namely, as an estate planning tool. Upon our review of the record, we find that respondent's determination to the contrary was supported by substantial evidence.

At the fair hearing, DSS presented evidence that most of the assets in question consisted of bank accounts held jointly by petitioner and Stanton from which Stanton had written countless checks and made numerous substantial withdrawals in 2007 and 2008. The record also reflects that Stanton had been made a joint tenant of petitioner's residence with a right of survivorship and that petitioner retained a life estate therein. Stanton testified that he became petitioner's attorney-in-fact prior to being named a joint owner of her accounts and that, over a period

of years, he received many financial gifts from petitioner and made large withdrawals on her behalf. According to Stanton, petitioner wanted him to have the money and not only gave him unfettered access to her accounts, but encouraged him to use it. Petitioner's counsel conceded that $141,410.12 of the funds that Stanton withdrew during the look-back period were for uncompensated value. However, counsel argued that petitioner had transferred the various assets to Stanton because she was grateful for his friendship of over 40 years and wished to avoid probate so that her relatives would be unable to challenge the disposition of her estate. This assertion was supported by the affidavit of petitioner's former estate planning attorney, who alleged that petitioner had indicated to her in 2005 that she wished to leave her entire estate to Stanton and that, when petitioner sought her advice in 2007 on how to avoid probate so that her relatives would be unable to interfere with her estate plans, she advised her that she could do so by creating joint tenancies with Stanton.

Despite the existence of evidence that would support a contrary result, substantial evidence supports respondent's determination that petitioner failed to rebut the presumption that the subject transfers were made, at least in part, for the purpose of qualifying for Medicaid benefits (*see Matter of Loiacono v Demarzo*, 72 AD3d at 970; *Matter of Campbell v Commissioner of N.Y. State Dept. of Health*, 14 AD3d at 768). There is no evidence, other than Stanton's self-serving allegations, that the withdrawals he made from the joint accounts were, in fact, "gifts" from petitioner,* and the evidence demonstrated that Stanton was uncooperative in petitioner's eligibility evaluation process and had failed to disclose the alleged monetary gifts from petitioner as an income source on other unrelated applications for public assistance. Moreover, DSS established that petitioner was elderly and she was diagnosed with senile dementia after her fall. No medical evidence was presented regarding the state of petitioner's health prior to her admission to a nursing home. Thus, the allegations of petitioner's estate planning attorney that petitioner was in good health and had no intention of ever entering a nursing care facility were unsubstantiated. We defer to DSS's assessment of the witnesses' credibility (*see Matter of Cullen v New York State Dept. of Social*

---

* We note that the Administrative Law Judge questioned petitioner at the nursing home in the presence of counsel for the parties and that such questioning was recorded. Based on petitioner's answers, the Administrative Law Judge determined that petitioner could not render any competent testimony with regard to Stanton.

*Servs.*, 155 AD2d 857, 857 [1989]; *see generally Matter of Berenhaus v Ward*, 70 NY2d 436, 443 [1987]; *Matter of Bello v New York State Off. of Temporary & Disability Assistance*, 90 AD3d 1706, 1707 [2011]) and discern no basis to disturb its determination here.

We also find that respondent's determination was not affected by an error of law. Pursuant to Social Services Law § 366 (5) (e) (6), all of the transfers carried out by Stanton are attributed to petitioner for purposes of determining her eligibility for Medicaid benefits, regardless of whether she was suffering from senile dementia prior to her admission to the nursing home. Thus, petitioner's argument that the transfers of assets were made by Stanton for his own personal gain, rather than by petitioner in order to qualify for Medicaid benefits, is unavailing.

We have considered petitioner's remaining contention and, to the extent that it is properly before us, find it to be without merit.

Peters, J.P., Lahtinen, Kavanagh and Garry, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.