# SUPREME COURT OF THE STATE OF NEW YORK
## Appellate Division, Fourth Judicial Department

1152
TP 13-00733
PRESENT: SCUDDER, P.J., FAHEY, PERADOTTO, LINDLEY, AND VALENTINO, JJ.
_____

IN THE MATTER OF FRANCES ALBINO, PETITIONER,

                        V                         MEMORANDUM AND ORDER

NIRAV R. SHAH, M.D., M.P.H., COMMISSIONER, NEW
YORK STATE DEPARTMENT OF HEALTH AND ELIZABETH R.
BERLIN, EXECUTIVE DEPUTY COMMISSIONER, NEW YORK
STATE OFFICE OF TEMPORARY AND DISABILITY
ASSISTANCE, RESPONDENTS.
_____

MANNION & COPANI, SYRACUSE (ANTHONY F. COPANI OF COUNSEL), FOR
PETITIONER.

ERIC T. SCHNEIDERMAN, ATTORNEY GENERAL, ALBANY (VICTOR PALADINO OF
COUNSEL), FOR RESPONDENTS.
-----------------------------------------------------------------------

     Proceeding pursuant to CPLR article 78 (transferred to the
Appellate Division of the Supreme Court in the Fourth Judicial
Department by order of the Supreme Court, Onondaga County [John C.
Cherundolo, A.J.], entered April 22, 2013) to review a determination
finding that petitioner was subject to a 14.46-month delay in her
Medicaid eligibility due to her transfer of resources in order to
qualify for Medicaid coverage.

     It is hereby ORDERED that the determination is unanimously
confirmed without costs and the petition is dismissed.

     Memorandum:  Petitioner commenced this CPLR article 78 proceeding
challenging the determination that a 14.46-month delay in her Medicaid
eligibility was properly imposed as a penalty for transferring
resources in order to qualify for Medicaid coverage.  We confirm the
determination.

     Petitioner purchased a life estate in real property located on
Diffin Road in Cicero (Diffin Road property) sometime prior to July
2007.  On July 23, 2007, petitioner's daughter and grandson purchased
a home located on Lakeshore Road in Cicero (Lakeshore Road property)
as joint tenants with rights of survivorship for $215,000.  Then, on
October 19, 2007, petitioner purchased a life estate in the Lakeshore
Road property for $70,000, paying $35,000 each to her daughter and
grandson.

     On November 13, 2008, i.e., approximately 13 months after she had
purchased a life estate in the Lakeshore Road property, petitioner
became a resident of an assisted living facility.  On November 30,

2009, petitioner entered into a contract to sell her interest in the Diffin Road property to persons unrelated to her for $159,000. Then, on January 2, 2010, petitioner fell and broke her hip. That injury required surgery and hospitalization for five days, after which time petitioner was discharged, and she thereafter resided in a nursing home.

Petitioner was initially a "private pay" client at the nursing home and, between March 2010 and October 2010, she paid over $54,000 to stay at that facility. By April 2010, however, petitioner had also applied to the Onondaga County Department of Social Services (OCDSS) for medical assistance. By decision dated June 9, 2011, OCDSS denied petitioner's request for assistance for the month of March 2010, reasoning that petitioner had excess income of $8,063.13 for that month. More importantly for purposes of this matter, OCDSS also assessed petitioner a penalty of a period of 14.46 months for which she would be ineligible for Medicaid. The penalty was based on OCDSS's determination that, on October 19, 2007, petitioner purchased the life estate in the Lakeshore Road property and that, on February 2, 2010, she gifted to her daughter cash totaling $36,250, thus yielding total divestments of $106,250.

At the fair hearing conducted on the administrative appeal filed by petitioner, OCDSS tendered evidence establishing that petitioner's 2007 and 2008 federal income tax returns listed the Diffin Road property as her address, that her driver's license listed the Diffin Road property as her address, and that she never registered the Lakeshore Road property as her address with the Onondaga County Board of Elections. Petitioner responded with evidence that included undated mail sent to her at the Lakeshore Road property, and an undated, unsworn statement in which she expressed her intent to return to her "home" at the Lakeshore Road property when able to do so. The determination of OCDSS was affirmed on administrative appeal, and we now confirm the determination following the fair hearing inasmuch as it is supported by the requisite substantial evidence (*see generally Matter of Mallery v Shah*, 93 AD3d 936, 937).

" 'In determining the medical assistance eligibility of an institutionalized individual, any transfer of an asset by the individual . . . for less than fair market value made within or after the look-back period shall render the individual ineligible for nursing facility services' for a certain penalty period (Social Services Law § 366 [5] [d] [3]). The look-back period is the '[60]-month period[ ] immediately preceding the date that an [applicant] is both institutionalized and has applied for medical assistance' (§ 366 [5] [d] [1] [vi]). Where an applicant has transferred assets for less than fair market value, the burden of proof is on the applicant to 'rebut the presumption that the transfer of funds was motivated, in part if not in whole, by . . . anticipation of future need to qualify for medical assistance' " (*Matter of Donvito v Shah*, 108 AD3d 1196, 1197-1198). With respect to the specific issue of the purchase of a life estate for less than fair market value, Social Services Law § 366 (5) (e) (3) (ii) provides that "the purchase of a life estate interest in another person's home shall be treated as the disposal of an asset

for less than fair market value unless the purchaser resided in such home for a period of at least one year after the date of purchase."

"When 'reviewing a Medicaid eligibility determination made after a fair hearing, "the court must review the record, as a whole, to determine if the agency's decisions are supported by substantial evidence and are not affected by an error of law" ' (*Matter of Barbato v New York State Dept. of Health*, 65 AD3d 821, 822-823, *lv denied* 13 NY3d 712). Substantial evidence is 'such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact' (*300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176, 180; *see Matter of Lundy v City of Oswego*, 59 AD3d 954). 'The petitioner bears the burden of demonstrating eligibility' (*Matter of Gabrynowicz v New York State Dept. of Health*, 37 AD3d 464, 465), and the agency's determination should be upheld when it is 'premised upon a reasonable interpretation of the relevant statutory provisions and is consistent with the underlying policy of the Medicaid statute' (*Matter of Golf v New York State Dept. of Social Servs.*, 91 NY2d 656, 658)" (*Matter of Peterson v Daines*, 77 AD3d 1391, 1392-1393).

Applying those rules here, we conclude that the determination that petitioner transferred assets for less than fair market value is supported by substantial evidence. We note that our review is limited to petitioner's purchase of the life estate in the Lakeshore Road property inasmuch as petitioner does not challenge herein the determination with respect to the transfer of cash to her daughter. In any event, the evidence submitted at the fair hearing demonstrates that, although petitioner came to reside in an assisted living facility approximately 13 months after she purchased the life estate in the Lakeshore Road property, there is no objective proof that petitioner resided at the Lakeshore Road property for a period of at least one year after the date of such purchase (*see* Social Services Law § 366 [5] [e] [3] [ii]). Indeed, despite the fact that petitioner purchased the life estate in the Lakeshore Road property on October 19, 2007, petitioner's 2007 and 2008 federal income tax returns list the Diffin Road property as petitioner's address, as did petitioner's driver's license and a voter registration form that petitioner completed in 1990. Petitioner's efforts to explain the addresses listed on her tax returns and driver's license are unpersuasive, particularly in view of the fact that the Lakeshore Road property is not listed as petitioner's address either on mail sent to petitioner by the Onondaga County Board of Elections relative to the 2009 primary election or in OCDSS's address history for petitioner. Moreover, petitioner did not have a telephone or utility bill in her name at the Lakeshore Road property, and she did not sell the Diffin Road property, which she had acquired well before purchasing the Lakeshore Road property life estate, until November 30, 2009, i.e., over one year *after* entering the assisted living facility.

Petitioner's contention that her daughter and grandson purchased the Lakeshore Road property in part for her use and enjoyment is belied by the fact that they sold petitioner a life estate in that property approximately two months after they initially bought it. At the time she purchased the life estate in the Lakeshore Road property,

petitioner was 85 years old, and there is nothing in the record to indicate that she was in good health at the time of that transaction, or that her entry into an assisted living facility approximately 13 months thereafter and application for Medicaid benefits less than three years thereafter, were unanticipated events (*cf. Mallery*, 93 AD3d at 938).

Finally, we note that there is no merit to what appears to be petitioner's further contention that the Lakeshore Road property should be considered her homestead and thus an exempt asset for Medicaid eligibility purposes (*see* Social Services Law § 366 [2] [a] [1] [ii]; 18 NYCRR 360-1.4 [f]).

Entered:  November 8, 2013                        Frances E. Cafarell
                                                  Clerk of the Court