Matter of Underwood v Zucker (2021 NY Slip Op 00951)





Matter of Underwood v Zucker


2021 NY Slip Op 00951


Decided on February 11, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 11, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., CENTRA, PERADOTTO, LINDLEY, AND BANNISTER, JJ.


749 TP 20-00184

[*1]IN THE MATTER OF VICTORIA R. UNDERWOOD, PETITIONER,
v
HOWARD ZUCKER, COMMISSIONER, NEW YORK STATE DEPARTMENT OF HEALTH, RESPONDENT. 






HINMAN, HOWARD & KATTELL, LLP, SYRACUSE (DEREK S. UNDERWOOD OF COUNSEL), FOR PETITIONER. 
LETITIA JAMES, ATTORNEY GENERAL, ALBANY (JONATHAN D. HITSOUS OF COUNSEL), FOR RESPONDENT. 


 Proceeding pursuant to CPLR article 78 (transferred to the Appellate Division of the Supreme Court in the Fourth Judicial Department by order of the Supreme Court, Onondaga County [Scott J. DelConte, J.], entered January 30, 2020) to review a determination of respondent. The determination, among other things, adjudged that petitioner is not eligible for nursing home care and services for a period of 22 months. 
It is hereby ORDERED that the determination so appealed from is unanimously modified on the law and the petition is granted in part by annulling the determination insofar as it found that petitioner was ineligible for nursing facility services for a penalty period of 22 months and that uncompensated transfers were made for amounts related to the unpaid balance of a loan to Yogurt Gone Wild, Inc., gifts to the daughter that predate 2016, that portion of a car loan to the son that was repaid, and funds that respondent stipulated should not affect petitioner's eligibility, and as modified the determination is confirmed without costs and the matter is remitted to the New York State Department of Health to recalculate the penalty period and the amount of retroactive Medicaid payments owed to petitioner.
Memorandum: Petitioner commenced this CPLR article 78 proceeding seeking to annul the determination of the New York State Department of Health (DOH), which upheld after a fair hearing the findings of the Onondaga County Department of Social Services (DSS) that petitioner had excess resources and was not Medicaid-eligible for nursing facility services for a period of 22 months on the ground that she had made uncompensated transfers during the look-back period (see Social Services Law § 366 [5] [a], [e] [1] [vi]). We now modify that determination.
"In determining the medical assistance eligibility of an institutionalized individual, any transfer of an asset by the individual or the individual's spouse for less than fair market value made within or after the look-back period shall render the individual ineligible for nursing facility services" for a certain penalty period (Social Services Law § 366 [5] [e] [3]). The look-back period is the "[60]-month period immediately preceding the date that an institutionalized individual is both institutionalized and has applied for medical assistance" (§ 366 [5] [e] [1] [vi]). Where a Medicaid applicant has transferred during the relevant look-back period "assets for less than fair market value, he or she must rebut the presumption that the transfer of funds was motivated, in part if not in whole, by . . . anticipation of a future need to qualify for medical assistance" (Matter of Burke, 145 AD3d 1588, 1589 [4th Dept 2016] [internal quotation marks omitted]).
When "reviewing a Medicaid eligibility determination made after a fair hearing, 'the court must review the record, as a whole, to determine if the agency's decisions are supported by substantial evidence and are not affected by an error of law' " (Matter of Barbato v New York [*2]State Dept. of Health, 65 AD3d 821, 822-823 [4th Dept 2009], lv denied 13 NY3d 712 [2009]). Substantial evidence is "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact" (300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 180 [1978]), and " '[t]he petitioner bears the burden of demonstrating eligibility' " (Matter of Albino v Shah, 111 AD3d 1352, 1354 [4th Dept 2013]; see Matter of Peterson v Daines, 77 AD3d 1391, 1393 [4th Dept 2010]).
Here, as a preliminary matter, respondent correctly concedes that the decision after the fair hearing failed to account for stipulated reductions in the total amount of uncompensated transfers. At the hearing, the DSS stipulated to the removal of three transfers, totaling $14,759.68, finding that petitioner had adequately documented the use of those funds. In its decision, however, the DOH erred in failing to account for any of the stipulated reductions, and thus the total amount of uncompensated transfers must be reduced by $14,759.68.
Contrary to petitioner's contention, the DOH did not err in determining that the value of vacant property owned by petitioner and her spouse was $79,000, of which $39,500 was deemed to be an excess resource for petitioner. Although petitioner submitted a letter from a real estate agent opining that the property was unusable and worth only $6,800, petitioner's spouse admitted that they paid $60,000 for the property and had never challenged the assessed value of that property, which was $79,000. We thus conclude that the determination of the DOH regarding the value of petitioner's share of that property is supported by substantial evidence (see generally 300 Gramatan Ave. Assoc., 45 NY2d at 180).
With respect to numerous transfers to her children, petitioner contends that the DOH erred in determining that they were made for less than fair market value and were "motivated, in part if not in whole, by . . . anticipation of a future need to qualify for medical assistance" (Burke, 145 AD3d at 1589 [internal quotation marks omitted]). We agree with respect to some of those transfers.
As the decision after the fair hearing noted, petitioner was diagnosed with Parkinson's disease in 2016. In December 2017, petitioner, who was suffering from delirium, was taken to the emergency room. She was transferred to a short-term care facility and, in February 2018, she was transferred to a long-term care facility. She applied for Medicaid services on February 27, 2018. As a result, the look-back period extends back to February 27, 2013 (see Social Services Law § 366 [5] [e] [1] [vi]).
Contrary to respondent's speculative assertion that petitioner was in ill health before 2016, the medical, documentary and testimonial evidence at the hearing established that petitioner was in good health with no serious medical issues until the 2016 diagnosis (cf. Matter of Corcoran v Shah, 118 AD3d 1473, 1474 [4th Dept 2014]). We thus conclude that the record establishes that, before her diagnosis, petitioner did not suffer from any major health issues that would have caused her to anticipate a need for future long-term care (see e.g. Matter of Sandoval v Shah, 131 AD3d 1254, 1256 [2d Dept 2015]; Matter of Rivera v Blass, 127 AD3d 759, 763 [2d Dept 2015]; cf. Burke, 145 AD3d at 1589-1590). Respondent's speculation that petitioner's dementia may have begun years before her diagnosis has no support in the record and is directly refuted by medical notes in September 2017 that petitioner had suffered only "[s]light worsening" in her cognitive abilities. "[S]ubstantial evidence does not arise from bare surmise, conjecture, speculation, or rumor . . . , or from the absence of evidence supporting a contrary conclusion" (Rivera, 127 AD3d at 762).
In any event, "the relevant standard is not whether [petitioner] could or should have foreseen that nursing home placement might eventually become necessary, but whether she made the requisite showing that the transfers were made 'exclusively for a purpose other than to qualify for medical assistance' (Social Services Law § 366 [5] [e] [4] [iii] [B]). The fact that a future need for nursing home care may be foreseeable for a person of advanced age with chronic medical conditions is not dispositive of the question whether a transfer by such a person was made for the purpose of qualifying for such assistance" (Matter of Collins v Zucker, 144 AD3d 1441, 1444 [3d Dept 2016]).
Addressing first the transfers to petitioner's daughter, we conclude that petitioner established that there was a clear history or pattern of providing financial assistance to the [*3]daughter that predated the look-back period (cf. Burke, 145 AD3d at 1589; Corcoran, 118 AD3d at 1474). We nevertheless conclude that there is substantial evidence to support the determination that those monetary gifts significantly increased after 2016, i.e., when petitioner was diagnosed with her chronic medical condition. Petitioner was unable to explain the reason for the significant increase, and we therefore conclude that petitioner failed to rebut the presumption that the transfers in 2016 and thereafter were " 'motivated, in part if not in whole, by . . . anticipation of future need to qualify for medical assistance' " (Matter of Donvito v Shah, 108 AD3d 1196, 1198 [4th Dept 2013]). We do, however, agree with petitioner that she rebutted the presumption with respect to those transfers before 2016, i.e., before petitioner could have anticipated a need to qualify for medical assistance. Those transfers were part of petitioner's consistent pattern of gift-giving to her daughter, were made at a time when petitioner was financially solvent and were made before the sudden deterioration of her health (see Collins, 144 AD3d at 1442-1444; cf. Burke, 145 AD3d at 1589-1590; Corcoran, 118 AD3d at 1474; Donvito, 108 AD3d at 1198).
Petitioner further contends that a transfer of $10,000 to one of her sons in August 2014 was a loan made to assist him in purchasing a vehicle and was not motivated by any anticipation of a future need to qualify for medical services. "Assets conveyed through a note or a mortgage during the look-back period are considered to be transfers for full market value when the underlying loan is actuarially sound based upon the lender's life expectancy, provides for equal payments throughout the life of the loan—with no deferrals or balloon payments—and includes a provision prohibiting cancellation upon the lender's death" (Matter of Wellner v Jablonka, 160 AD3d 1261, 1263 [3d Dept 2018], citing Social Services Law § 366 [5] [e] [3] [iii]; and 42 USC § 1396p [c] [1] [I]). In our view, petitioner established that the loan was actuarially sound inasmuch as it had a three-year repayment plan, called for monthly payments, and had no provision to cancel the debt upon petitioner's death. We therefore conclude that, at the time the transfer of funds was made, it was made for fair market value (cf. Rivera, 127 AD3d at 762). We also note that the loan was made more than a year before petitioner's diagnosis (cf. Wellner, 160 AD3d at 1262-1264). Nevertheless, it is undisputed that the son failed to make consistent payments and did not make any payments on the loan after January 2016, i.e., the year in which petitioner was diagnosed with her chronic medical condition. In our view, the amount of the unpaid balance of the loan became a transfer for less than fair market value, and petitioner failed to rebut the presumption that the loan forgiveness was motivated, at least in part, by an anticipation of a future need to qualify for medical assistance (see Wellner, 160 AD3d at 1263-1264; cf. Collins, 144 AD3d at 1443-1444). According to the handwritten ledger submitted by petitioner as an exhibit at the hearing, the son repaid $2,400 of the loan. We thus conclude that substantial evidence supports a determination that the remaining balance of the loan be considered an uncompensated transfer and be included in calculating petitioner's Medicaid penalty period.
In February 2014, petitioner's spouse loaned the parties' other son $150,000 to fund a yogurt business, Yogurt Gone Wild, Inc. (YGW), that the son was opening. The spouse and the son, as president of YGW, executed loan documents pursuant to which YGW agreed to a particular interest rate and agreed to repay the loan in monthly installments. Ultimately, YGW failed and declared bankruptcy. In order to provide petitioner's spouse with some measure of repayment, the son, as president of YGW, executed an asset sale agreement pursuant to which petitioner's spouse was assigned the proceeds of the sale of YGW's equipment. Petitioner's spouse received $55,195.40 from the sale of that equipment. Inasmuch as YGW had no further assets, petitioner's spouse testified at the fair hearing that there was no way to seek redress for the remaining balance of the loan (see generally Rivera, 127 AD3d at 763).
We agree with petitioner that the determination that the unpaid balance of the loan was a transfer for less than fair market value is not supported by substantial evidence. The loan documents comport with section 6016 (c) of the Deficit Reduction Act of 2005, which amended the Social Security Act (Pub L 109-171, 120 US Stat 4 [109th Cong, 2d Sess, Feb. 8, 2006]; see 42 USC § 1396p [c] [1] [I]; see also NY Dept of Health Directive No. 06 OMM/ADM-5 at 24 [July 20, 2006]). Even assuming, arguendo, that the loan constituted a transfer for less than fair market value, we conclude that petitioner rebutted the presumption that it was made for purposes of qualifying for medical assistance. The loan was made long before petitioner was diagnosed with her chronic medical condition (cf. Wellner, 160 AD3d at 1262, 1264). To conclude that the loan was in any way made for the purpose of qualifying for medical assistance [*4]for some as yet undiagnosed and unknown medical problem is not " 'reasonable and plausible' " (Matter of Miller v DeBuono, 90 NY2d 783, 793 [1997]).
Contrary to petitioner's contention, we conclude that the same cannot be said for a loan made to both sons after petitioner was diagnosed with her chronic medical condition (see Wellner, 160 AD3d at 1262). That loan, which was used to fund the purchase of another corporation, did not comply with the Deficit Reduction Act of 2005 (see 42 USC § 1396p [c] [1] [I]) or Social Services Law § 366 (5) (e) (3) (iii) inasmuch as the loan called for balloon payments. We thus conclude that the transfer of those funds was not made for fair market value (see Wellner, 160 AD3d at 1263). Additionally, petitioner failed to rebut the presumption that the transfer was motivated, at least in part, by anticipation of a future need to qualify for medical assistance (see Burke, 145 AD3d at 1589).
We therefore modify the determination by granting the petition in part and annulling the determination insofar as it found that petitioner was ineligible for nursing facility services for a penalty period of 22 months and that uncompensated transfers were made for amounts related to the unpaid balance of a loan to Yogurt Gone Wild, Inc., gifts to the daughter that predate 2016, that portion of a car loan to the son that was repaid, and funds that respondent stipulated should not affect petitioner's eligibility. We further remit the matter to the DOH to recalculate the penalty period and the amount of retroactive Medicaid payments owed to petitioner.
Entered: February 11, 2021
Mark W. Bennett
Clerk of the Court