Matter of Boldt v New York State Off. of Temporary & Disability Assistance (2022 NY Slip Op 06344)

Matter of Boldt v New York State Off. of Temporary & Disability Assistance

2022 NY Slip Op 06344

Decided on November 10, 2022

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 10, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department
671
TP 22-00275
 

&em;

[*1]IN THE MATTER OF THE APPLICATION OF LINDA J. BOLDT, AS VOLUNTARY ADMINISTRATOR
OF THE ESTATE OF DOREEN BARR, DECEASED,
PETITIONER, 
 
 MEMORANDUM AND ORDER
 
v
NEW YORK STATE OFFICE OF TEMPORARY AND
DISABILITY ASSISTANCE AND NEW YORK STATE
DEPARTMENT OF HEALTH, RESPONDENTS.
 
STAMM LAW FIRM, WILLIAMSVILLE (BRADLEY J. STAMM OF COUNSEL), FOR PETITIONER.
LETITIA JAMES, ATTORNEY GENERAL, ALBANY (JONATHAN D. HITSOUS OF COUNSEL), FOR RESPONDENTS.
 

Proceeding pursuant to CPLR article 78 (transferred to the Appellate Division of the Supreme Court in the Fourth Judicial Department by order of the Supreme Court, Erie County [Timothy J. Walker, A.J.], entered February 23, 2022) to review a determination of respondents. The determination adjudged that Doreen Barr was not Medicaid-eligible for nursing facility services for a period of approximately nine months.
It is hereby ORDERED that the determination is unanimously annulled on the law without costs, the amended petition is granted, and the matter is remitted to respondent New York State Office of Temporary and Disability Assistance for further proceedings in accordance with the following memorandum: Petitioner, as voluntary administrator of the estate of her deceased mother, Doreen Barr (decedent), commenced this CPLR article 78 proceeding, which was transferred to this Court pursuant to CPLR 7804 (g), seeking to annul the determination that decedent was not Medicaid-eligible for nursing facility services for a period of approximately nine months on the ground that decedent had made uncompensated transfers during the
60-month look-back period (see Social Services Law § 366 [5] [a], [e] [1] [vi]). The determination of respondent New York State Office of Temporary and Disability Assistance (OTDA) that decedent was not eligible for those services was affirmed by respondent New York State Department of Health.
Pursuant to a personal service agreement (PSA) between petitioner, petitioner's husband and decedent, petitioner and her husband agreed to provide decedent with personal care services, including cooking, cleaning, washing, shopping and driving decedent to outside appointments, such as doctors' visits. In exchange for those services, petitioner and her husband would be paid $2,500 per month, a sum that the PSA noted was commensurate with the approximate number of hours per month that would be necessary to provide the care at a rate of $20 per hour. While the agreement appeared to contemplate that monthly payments would be made, it also recognized that decedent would be permitted to make payments for the care in advance inasmuch as the PSA contained a clause providing that any prepaid monies must be returned if not earned prior to decedent's death.
From October 2015 until January 2019, when decedent entered a nursing facility, she resided with petitioner and petitioner's husband. Decedent made only one monthly payment to petitioner and her husband in accordance with the PSA. However, as relevant here, in 2015 decedent made four transfers to petitioner totaling more than $40,000 after decedent received cash value for certain insurance policies she owned. Just prior to decedent moving into the [*2]nursing home facility, she applied for Medicaid. OTDA approved the application but imposed a penalty period of 8.81477 months based upon the determination that decedent made uncompensated transfers, including the cashed insurance policy transfers, within the look-back period. After a fair hearing, the Administrative Law Judge (ALJ) upheld OTDA's determination. The ALJ noted that the PSA provided for services to be paid on a monthly basis, and found that no credible documentation was provided concerning the daily hours of services actually rendered to decedent.
"In determining the medical assistance eligibility of an institutionalized individual, any transfer of an asset by the individual . . . for less than fair market value made within or after the look-back period shall render the individual ineligible for nursing facility services" for a certain penalty period (Social Services Law § 366 [5] [d] [3]). The look-back period is the "[60]-month period[] immediately preceding the date that an [applicant] is both institutionalized and has applied for medical assistance" (§ 366 [5] [d] [1] [vi]). When such a transfer has occurred, a presumption arises that the transfer "was motivated, in part if not in whole, by . . . anticipation of a future need to qualify for medical assistance," and it is the applicant's burden to establish his or her eligibility for Medicaid by rebutting the presumption (Matter of Mallery v Shah, 93 AD3d 936, 937 [3d Dept 2012] [internal quotation marks omitted]). As pertinent here, "an applicant may do so by demonstrating that he or she intended to receive fair consideration for the transfers or that the transfers were made exclusively for purposes other than qualifying for Medicaid" (Matter of Wellner v Jablonka, 160 AD3d 1261, 1262 [3d Dept 2018]; see § 366 [5] [e] [4] [i], [ii]).
Here, petitioner submitted documentary proof of the PSA, which was entered into in 2015, more than three years before decedent entered the nursing home. As noted above, while the PSA contemplated monthly payments for the personal care services, it also contemplated that decedent may make payments in advance. In addition, petitioner submitted bank statements demonstrating that decedent did not have money to pay for the services until after she received cash value for the insurance policies. Petitioner also submitted a monthly calendar that documented the care provided to decedent during the relevant time period. While the calendar did not provide the number of hours spent on each task, "a daily log of hours worked and services rendered is not necessarily required" (Matter of Kerner v Monroe County Dept. of Human Servs., 75 AD3d 1085, 1087 [4th Dept 2010]). Moreover, the PSA was based on a monthly, not hourly, payment schedule, and the monthly amount was commensurate with fair market value for the type of services performed. On this record, we conclude that the determination that the disputed transfers of the cashed-in insurance policies to petitioner were uncompensated transfers is not supported by substantial evidence.
We therefore annul the determination, grant the amended petition, and remit the matter to OTDA to determine decedent's eligibility for medical assistance benefits following recalculation of the period set forth in Social Services Law § 366 (5).
Entered: November 10, 2022
Ann Dillon Flynn
Clerk of the Court