RSRNC, LLC v Wilson (2023 NY Slip Op 05432)

RSRNC, LLC v Wilson

2023 NY Slip Op 05432

Decided on October 26, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 26, 2023

535560
[*1]RSRNC, LLC, Doing Business as Riverside Center for Rehabilitation and Nursing, Appellant,
v
Brian Wilson, Defendant, and Theresa Beaudoin, as Rensselaer County Commissioner of Social Services, Respondent.

Calendar Date:September 13, 2023

Before:Garry, P.J., Egan Jr., Aarons, McShan and Mackey, JJ.

Hinman, Howard & Kattell LLP, Binghamton (Garrett T. Lyons of counsel), for appellant.
Johnson & Laws, LLC, Clifton Park (Nicole Christine Haddadnia of counsel), for respondent.

Garry, P.J.
Appeal from an order of the Supreme Court (Richard J. McNally Jr., J.), entered April 22, 2022 in Rensselaer County, which granted a motion by defendant Rensselaer County Commissioner of Social Services for summary judgment dismissing the amended complaint against her.
Plaintiff, a licensed nursing home facility and participant in the state's Medicaid program, provided care to Homer Wilson (hereinafter decedent) from April 2015 until the time of his death in January 2018. In May 2015, decedent's son, defendant Brian Wilson (hereinafter Wilson), filed an application for chronic care and community-based medical assistance benefits on decedent's behalf with the Rensselaer County Department of Social Services (hereinafter DSS). In December 2015, DSS denied the chronic care portion of the application, finding that decedent had transferred, to Wilson, assets totaling $178,084.47 for less than fair market value during the 60-month look-back period preceding the application, mandating a penalty of 18.9 months of Medicaid ineligibility. Despite Wilson's request, no fair hearing was held.[FN1] In July 2016, plaintiff commenced the instant action, setting forth two causes of action against defendant Rensselaer County Commissioner of Social Services (hereinafter the Commissioner).[FN2] In the first cause of action, plaintiff sought a judgment declaring that decedent was eligible for full Medicaid benefits during the pertinent time period, directing the Commissioner to process and approve the subject application and awarding plaintiff damages in the amount of decedent's private pay balance due and owing, plus interest. In the second cause of action, plaintiff alleged that the Commissioner negligently failed to discharge her duty to provide Medicaid coverage to decedent, an allegedly eligible patient, and thereby proximately caused the same damages. The Commissioner answered and thereafter moved for summary judgment dismissing the amended complaint against her on various grounds, including plaintiff's failure to serve a notice of claim and the absence of material issues of fact. Supreme Court agreed that a notice of claim was a prerequisite to suit and granted the motion on that ground, dismissing the amended complaint against the Commissioner. Plaintiff appeals.
The threshold notice of claim issue requires that we first assess the nature of plaintiff's claims. Although inartfully pleaded, we agree that the amended complaint states a cause of action sounding in breach of contract. A skilled nursing facility's "private financial interest in recovering expenditures rendered creates a relationship of purchaser and seller, thereby permitting it to bring a plenary action in its own right against the governmental agency designated to declare eligibility" (Long Beach Mem. Nursing Home v D'Elia, 108 AD2d 901, 901 [2d Dept 1985] [internal quotation marks and citation omitted]; see Matter of Peninsula Gen. Nursing Home v Sugarman, 57 AD2d 268, 280-281 [1st Dept 1977, Lane, J., [*2]dissenting], revd on dissenting op below 44 NY2d 909 [1978]; VDRNC, LLC v Merrick, 191 AD3d 1430, 1431 [4th Dept 2021]). That action, often denominated one for declaratory judgment, sounds in breach of contract (see Matter of Peninsula Gen. Nursing Home v Sugarman, 57 AD2d at 281 [Lane, J., dissenting]; see also SRN Corp. v Glass, 244 AD2d 545, 546 [2d Dept 1997]; Long Beach Mem. Nursing Home v D'Elia, 108 AD2d at 901; but see New York Hosp.-Westchester Div. v Krauskopf, 98 AD2d 667, 667-668 [1st Dept 1983]). Plaintiff's first cause of action seeks to recover the value of medical services rendered to an allegedly Medicaid-eligible individual from the governmental agency designated to evaluate eligibility, and, contrary to the Commissioner's argument, its use of language associated with negligence does not transform a claim that is contractual in nature into a tort (see Clark-Fitzpatrick, Inc. v Long Is. R.R. Co., 70 NY2d 382, 389-390 [1987]).
The question is thus whether a breach of contract claim against the Commissioner required service of a notice of claim. The General Municipal Law, which limits the requirement for notices of claim to "tort" claims (General Municipal Law § 50-e [1] [a]) or claims for "personal injury, wrongful death or damage to real or personal property" (General Municipal Law § 50-i [1]), is applicable to counties through County Law § 52 (see Sager v County of Sullivan, 145 AD3d 1175, 1176 [3d Dept 2016], lv denied 29 NY3d 902 [2017]). Although it is well accepted that the notice of claim requirements in the General Municipal Law do not apply to breach of contract claims (see Strauss v City of Glens Falls, 140 AD3d 1411, 1412 [3d Dept 2016]; Finke v City of Glen Cove, 55 AD3d 785, 786 [2d Dept 2008]), courts have recognized that the notice of claim provision in the County Law is broader, applying to "[a]ny claim . . . against a county for damage, injury or death, or for invasion of personal or property rights, of every name and nature, and whether casual or continuing trespass or nuisance and any other claim for damages arising at law or in equity, alleged to have been caused or sustained in whole or in part by or because of any misfeasance, omission of duty, negligence or wrongful act on the part of the county, its officers, agents, servants or employees" (County Law § 52 [1]). The County Law provision has thus been held to be applicable to some claims that are technically non-torts (see e.g. Mills v County of Monroe, 59 NY2d 307, 309-310 [1983], cert denied 464 US 1018 [1983]; Boyle v Kelley, 42 NY2d 88, 91 [1977]; Slemish Corp. S.A. v Morgenthau, 192 AD3d 465, 467 [1st Dept 2021], lv denied 37 NY3d 909 [2021]; Sager v County of Sullivan, 145 AD3d at 1176-1177; Picciano v Nassau County Civ. Serv. Commn., 290 AD2d 164, 170-171 [2d Dept 2001]; Malcuria v Town of Seneca, 66 AD2d 421, 424 [4th Dept 1979]). However, the broader sweep of County Law § 52 — indisputably still rooted in tort-like claims — does not extend so far as [*3]to encompass claims that are contractual in nature (see Smith v Rise E. School, 120 AD2d 726, 726 [2d Dept 1986]; Copece Contr. Corp. v County of Erie, 115 AD2d 320, 320 [4th Dept 1985]; but see Slemish Corp. S.A. v Morgenthau, 192 AD3d at 467).[FN3] We therefore find that Supreme Court erroneously concluded that plaintiff's first cause of action required compliance with the foregoing notice of claim requirements.[FN4]
The Commissioner argues, as an alternative ground for affirmance (see generally Parochial Bus Sys. v Board of Educ. of City of N.Y., 60 NY2d 539, 544-545 [1983]), that the amended complaint against her must nevertheless be dismissed because decedent was indisputably ineligible for chronic care medical assistance benefits during the relevant period. Where "an institutionalized applicant for Medicaid . . . transfers assets for less than fair market value during the 60-month 'look-back period' before the date of the application, the applicant may be found to be ineligible for benefits for a period of time based upon the amount of the transfer" (Matter of Wellner v Jablonka, 160 AD3d 1261, 1261-1262 [3d Dept 2018], quoting Social Services Law § 366 [5] [e] [3]; see Social Services Law § 366 [5] [e] [1] [vi]; [5]). "When such a transfer has occurred, a presumption arises that the transfer was motivated, in part if not in whole, by anticipation of a future need to qualify for medical assistance, and it is the applicant's burden to establish his or her eligibility for Medicaid by rebutting the presumption" (Matter of Wellner v Jablonka, 160 AD3d at 1262 [internal quotation marks and citation omitted]; see Matter of Krajewski v Zucker, 145 AD3d 1252, 1253 [3d Dept 2016]). "[S]uch transfer will not result in such a penalty period where, as relevant here, there is a 'satisfactory showing' that the individual 'intended to dispose of the assets . . . at fair market value . . . [or] the assets were transferred exclusively for a purpose other than to qualify for medical assistance' " (Matter of Whittier Health Servs., Inc. v Pospesel, 133 AD3d 1176, 1177 [3d Dept 2015], quoting Social Services Law § 366 [5] [e] [4] [iii]; see Matter of Krajweski v Zucker, 145 AD3d at 1253).
The Commissioner's submissions in support of her motion indicate that decedent relocated from Ohio to New York in 2004 to live with Wilson for dual reasons: decedent's home was being foreclosed upon and he was experiencing difficulties with some aspects of daily living. In response to DSS's request for additional documentation to determine decedent's eligibility — specifically, copies of all checks over $2,000 that were written from decedent's accounts and "what bills the money was for" — Wilson submitted a "set of bills . . . representative of . . . monthly bills" for Wilson's household. These ranged from the family's credit card statements — used for gas, food and household goods — to the family's mortgage, utilities and insurance premiums. The documentation also included an invoice [*4]from one of decedent's doctors as an "example" of that category of expense, along with the representation that Wilson did not have a practice of keeping receipts for things like copayments and prescription costs, which he paid directly out of his own accounts. Student loan invoices were also supplied as decedent contributed to the cost of private school for Wilson's daughter — decedent's only biological grandchild. Ultimately, DSS determined that $178,084.47 was transferred from decedent's accounts to Wilson over the five years in question and that the documentation provided did not constitute an appropriate rebuttal demonstrating where decedent's money had gone.
The Commissioner further submitted email exchanges between Wilson and DSS, including a response from Wilson following DSS's email indicating that it was denying the application. Wilson explained in that correspondence that decedent routinely transferred funds to him to aid Wilson and his family with their declining financial situation "assuming he simply didn't need to save and restrict his money flow"; Wilson accordingly supplied documentation of the family's monthly expenses when asked for monthly bills. He offered to provide additional information and inquired about a fair hearing, which, as noted above, never occurred. Similarly, in response to DSS's first set of interrogatories, Wilson stated that, beginning in 2004, decedent gave Wilson money to contribute to household expenses generally, and, by 2010, decedent was providing significant and ongoing contributions to the household income to help cover the family's cost of daily living. This included decedent paying for a portion of the private school tuition for Wilson's daughter as early as 2004.
Mindful that this is a plenary action, rather than a proceeding in which our review of an administrative determination is circumscribed, the Commissioner's own submissions raise material issues of fact as to whether the subject transfers, or some portion thereof, were exclusively for a purpose other than Medicaid planning, necessitating denial of her motion regardless of the sufficiency of the opposing papers (see Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). Not only is there a material question of fact as to whether decedent's transfers were exclusively for the purpose of financially supporting Wilson and his family (cf. Matter of Collins v Zucker, 144 AD3d 1441, 1443 [3d Dept 2016]), there is a question as to the value of expenses related to decedent's room and board, for which documentation was provided, and thus whether the penalty imposed was excessive (compare Matter of Krajewski v Zucker, 145 AD3d at 1254).
Even if the Commissioner had met her prima facie burden, Wilson's submissions raise similar issues of fact (see Alvarez v Prospect Hosp., 68 NY2d at 324). Initially, Wilson's complete deposition testimony, submitted in opposition to the motion, reveals that decedent's placement in a residential care facility was never anticipated[*5]. Although decedent had some long-standing chronic conditions, he, Wilson and other involved family members anticipated that decedent would live with Wilson for the remainder of his life and that he would pay for that "rent and care." It was not until 2011 or 2012 that decedent's health began to more seriously decline, and it was not until 2015 that Wilson and decedent's physicians considered professional care. In any event, "[t]he fact that a future need for nursing home care may be foreseeable for a person of advanced age with chronic medical conditions is not dispositive of the question whether a transfer by such a person was made for the purpose of qualifying for such assistance where, as here, that inference is based solely upon speculation and the other evidence indicates otherwise" (Matter of Collins v Zucker, 144 AD3d at 1444). The testimony also reflects that, in order to care for decedent, Wilson's wife ceased running a daycare out of their home, forgoing an income since 2004. This care — provided full-time for over a decade and otherwise uncompensated — ranged from meal preparation and medication administration to physical assistance and daily hygiene. Wilson's submissions also included a letter he sent to DSS in which he detailed the familial and financial circumstances between 2004 and 2015 that resulted in decedent's decision to help Wilson avoid filing for bankruptcy.
In sum, given the evidence of decedent's intent to help Wilson avoid bankruptcy (cf. Matter of Collins v Zucker, 144 AD3d at 1443) and his clear history of providing financial assistance to Wilson and his family well before the look-back period and before his health decline (cf. Matter of Underwood v Zucker, 191 AD3d 1438, 1441 [4th Dept 2021]), we find that issues of fact preclude summary judgment. We also find that there is a question as to whether some portion of the subject transfers were for the fair market value of the care rendered by Wilson's wife (cf. Matter of Kerner v Monroe County Dept. of Human Servs., 75 AD3d 1085, 1087 [4th Dept 2010]). The remaining arguments — including the Commissioner's assertion that deference is owed to DSS's implicit credibility assessments from a proceeding to which plaintiff was not a party (see generally Calvary Hosp. v D'Elia, 95 AD2d 817, 817 [2d Dept 1983]) — have been considered and determined to lack merit. The Commissioner's motion for summary judgment therefore should have been denied to the extent that it sought dismissal of plaintiff's first cause of action.
Egan Jr., Aarons, McShan and Mackey, JJ., concur.
ORDERED that the order is modified, on the law, with costs to plaintiff, by reversing so much thereof as granted the motion by defendant Rensselaer County Commissioner of Social Services for summary judgment dismissing the amended complaint against her; motion denied, except as to the second cause of action; and, as so modified, affirmed.

Footnotes

Footnote 1: At what would have been the fair hearing, counsel for plaintiff erroneously asserted to the Hearing Officer that she was also representing decedent and Wilson. When counsel was unable to provide a power of attorney supporting that assertion, the hearing was discontinued. For reasons unclear from the record before us, it was never resumed. It does not appear that Wilson has pursued any judicial review of these irregularities.

Footnote 2: Plaintiff also asserted various causes of action against decedent and Wilson.

Footnote 3: To the extent that our decision in Sager v County of Sullivan may be read to suggest otherwise (145 AD3d at 1176-1177, 1177 n 2), we note that the question presented in Sager was only whether the plaintiff's claim for wrongful termination under Civil Service Law § 75-b required compliance with County Law § 52 (id. at 1176).

Footnote 4: Even if plaintiff's second cause of action could be said to be an independent negligence claim (see generally Sommer v Federal Signal Corp., 79 NY2d 540, 551-552 [1992]), any such tort would have required compliance with County Law § 52, and that claim was therefore properly dismissed.