Matter of Cooperstown Ctr. for Rehabilitation & Nursing v New York State Dept. of Health (2024 NY Slip Op 01368)

Matter of Cooperstown Ctr. for Rehabilitation & Nursing v New York State Dept. of Health

2024 NY Slip Op 01368

Decided on March 14, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 14, 2024

CV-23-0858
[*1]In the Matter of Cooperstown Center for Rehabilitation and Nursing et al., Petitioners,
v
New York State Department of Health, Respondent.

Calendar Date:January 19, 2024

Before:Egan Jr., J.P., Clark, Pritzker, Fisher and Powers, JJ.

Cowart Dizzia LLP, New York City (Jennifer T. Sweeney of counsel), for petitioners.
Letitia James, Attorney General, Albany (Jonathan D. Hitsous of counsel), for respondent.

Fisher, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Otsego County) to review a determination of respondent finding, among other things, Irene Layman ineligible for Medicaid benefits for a certain period of time.
Beginning in January 2020, petitioner Cooperstown Center for Rehabilitation and Nursing (hereinafter petitioner) provided certain care and services to Irene Layman (hereinafter decedent) until the time of her passing in September 2020. In February 2020, petitioner filed an application for medical assistance benefits through Medicaid on decedent's behalf with the Otsego County Department of Social Services (hereinafter DSS). In such application, petitioner identified the only remaining asset as a shared bank account between decedent and her two children, and further listed a home sold in April 2018 as the only transfer within the look-back period. In April 2020, DSS requested certain information relating to several transfers made by decedent during the look-back period, including a pair of $2,500 checks separately made to decedent's daughter and son in mid-2017, a $25,000 withdrawal in April 2018 that was split between decedent's daughter and son, a $5,000 check made to the daughter in March 2019 and the sale of decedent's home for $35,000 less than its assessed value of $90,000. Following petitioner's response explaining the transfers, DSS accepted certain explanations and rejected others, ultimately determining that decedent was ineligible for Medicaid benefits and imposing a three-month transfer penalty based on uncompensated transfers of $42,500 during the look-back period. Thereafter, petitioner timely requested a fair hearing and submitted further explanations for the subject transfers.
In September 2020, decedent passed away before the hearing was held. Approximately a week after decedent's passing, and without reference to same, petitioner filed an application seeking an undue hardship waiver on the grounds that decedent's "health and life will be endangered" due to her lack of independent resources to obtain medical care. DSS denied petitioner's application for an undue hardship waiver, and petitioner timely requested a fair hearing on same. In May 2022, following a combined hearing, respondent upheld both determinations by DSS. Petitioner and decedent's estate commenced this proceeding pursuant to CPLR article 78, and Supreme Court transferred the proceeding to this Court (see CPLR 7804 [g]).
Initially, we reject petitioners' contention that their right to due process was violated when DSS determined decedent's eligibility for Medicaid benefits before sending them an agency-required notice relating to transfers within the look-back period. Although such notice was not sent to petitioners prior to DSS's determination, the record is clear that DSS requested explanations relating to a specific list of transfers within the look-back period which were ultimately the reason for [*2]its determination (see Matter of Collins v D'Elia, 104 AD2d 1035, 1036 [2d Dept 1984]). The request further warned petitioners that such transfers were presumed to be made to qualify for Medicaid eligibility and that they may submit evidence to rebut this presumption. To that end, petitioners' contention that they were not afforded this opportunity to rebut that statutory presumption prior to DSS's determination is belied by the record, which reveals that they submitted responses to each challenged transfer and were successful on several points —reducing the total penalty that was imposed. Accordingly, because petitioners failed to demonstrate that they suffered any prejudice as a result of DSS's failure to send the required notice (see Solarski v Glass, 225 AD2d 868, 870-871 [3d Dept 1996]), and further because the notice that was sent to them allowed them to submit opposition and fully prepare for the fair hearing, we cannot say that DSS's omission deprived petitioners of any substantial rights (see Matter of Sternberg v New York State Off. for People with Dev. Disabilities, 204 AD3d 680, 680 [2d Dept 2022]; Matter of Collins v D'Elia, 104 AD2d at 1036).
Turning to the merits, "[i]n reviewing a Medicaid eligibility determination rendered after a hearing, this Court must review the record, as a whole, to determine if the agency's decisions are supported by substantial evidence and are not affected by an error of law" (Matter of Krooks v Delaney, 203 AD3d 1292, 1294 [3d Dept 2022] [internal quotation marks and citations omitted]; see CPLR 7803 [4]). "Substantial evidence is a minimal standard that requires less than a preponderance of the evidence and demands only the existence of a rational basis in the record as a whole to support the findings upon which the determination is based" (Matter of Vera-Llivicura v State of New York, 211 AD3d 1447, 1449 [3d Dept 2022] [internal quotation marks and citations omitted]). For the purposes of determining the Medicaid eligibility of an applicant residing in a skilled nursing facility, any transfer for less than fair market value made during the look-back period of 60 months before the date of the application will render the applicant ineligible for benefits for a period of time (see Social Services Law § 366 [5] [e] [3]; Matter of Whittier Health Servs., Inc. v Pospesel, 133 AD3d 1176, 1177 [3d Dept 2015]). "When such a transfer has occurred, a presumption arises that the transfer was motivated, in part if not in whole, by anticipation of a future need to qualify for medical assistance, and it is the applicant's burden to establish his or her eligibility for Medicaid by rebutting this presumption" (RSRNC, LLC v Wilson, 220 AD3d 1139, 1142 [3d Dept 2023] [internal quotation marks and citations omitted]; see Matter of Conners v Berlin, 105 AD3d 1208, 1210 [3d Dept 2013]). However, such transfer will not result in a period of ineligibility where an applicant makes a satisfactory showing "that he or she intended [*3]to receive fair consideration for the transfers or that the transfers were made exclusively for purposes other than qualifying for Medicaid" (Matter of Wellner v Jablonka, 160 AD3d 1261, 1262 [3d Dept 2018], citing Social Services Law § 366 [5] [e] [4] [i], [ii]; see Matter of Krajewski v Zucker, 145 AD3d 1252, 1253 [3d Dept 2016]).
Here, the record demonstrates that decedent's daughter and son rendered certain care and covered certain shelter expenses for her before she was admitted into petitioner's facility. This included a period of time when decedent was living with her daughter, which called for the construction of a specialized bathroom to accommodate decedent's needs. Decedent's children also represented that it was decedent's "practice" to provide them with certain gifts for special occasions or when they were in financial need — citing specific examples of each. They further contended that they were unaware of the 60-month look-back period and had not engaged in any Medicaid planning. As it relates to the sale of decedent's home for approximately $35,000 below the market price of $90,000, petitioners contend that the price was fair because a long-time neighbor purchased it, agreed to perform repairs and maintenance, and allowed decedent to continue to live at the house for no cost while regularly going over to check on her.
Although petitioners contend that they have rebutted any presumption arising under Social Services Law § 366 (5) (e), we disagree. In recognizing their sincere efforts, DSS credited certain monthly payments made by decedent to the daughter and son for their years of care for their mother, as well as the check for $5,000 paid to the daughter for the construction of the specialized bathroom. DSS also reduced the below-market sale of the home to $23,000, recognizing the value from the services of the neighbor and that decedent could live without paying rent. Despite claims that decedent would engage in generous gift-giving for her family, no evidence of such transfers outside of the look-back period was offered to either DSS or respondent (see Matter of Burke, 145 AD3d 1588, 1589-1590 [3d Dept 2016]). Although decedent's daughter and son may have been unaware of the look-back period, it is not disputed that decedent required assistance for years prior to her admission — including living with her daughter and requiring a specialized bathroom — and could no longer safely live at home due to her several conditions and repeated falls, therefore the need for future nursing home care could have been reasonably anticipated (see Matter of Wellner v Jablonka, 160 AD3d at 1265; Matter of Mallery v Shah, 93 AD3d 936, 938 [3d Dept 2012]). Accordingly, deferring to the credibility assessments of respondent, we find that substantial evidence supports respondent's conclusion that petitioners did not rebut the presumption that the transfers were made, at least in part, for the purpose of qualifying for Medicaid assistance (see Matter of [*4]Wellner v Jablonka, 160 AD3d at 1265; Matter of Krajewski v Zucker, 145 AD3d at 1254).
Lastly, petitioner's application for an undue hardship application was properly denied. Petitioner offered only a limited effort by decedent attempting to regain her assets, having only sent a demand letter to her children (see 18 NYCRR 360-4.4 [c] [1] [ii] [d] [2] [iii]; Matter of Wellner v Jablonka, 160 AD3d at 1263).Moreover, inasmuch as decedent passed away while petitioner was preparing to discharge her for nonpayment, she "did not qualify for the undue hardship exception" (Matter of Conners v Berlin, 105 AD3d at 1211). We have examined the remaining contentions of the parties and have found them to be lacking merit or rendered academic.
Egan Jr., J.P., Clark, Pritzker and Powers, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.